[844 NE2d 748, 811 NYS2d 294]

SYLVIA MENDEL et al., Plaintiffs, and BIRJEES BARAKAT et al., Appellants, v HENRY PHIPPS PLAZA WEST, INC., et al., Respondents, et al., Defendants.

Decided February 9, 2006

APPEARANCES OF COUNSEL

*Thomas C. Monaghan*, Broad Channel, for appellants.

*Kramer Levin Naftalis & Frankel LLP*, New York City (*Michael J. Dell* and *Jeffrey L. Braun* of counsel), for respondents.

*Council of the City of New York*, New York City (*Jeffrey Haberman* and *Jay Damashek* of counsel), amicus curiae.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be affirmed, without costs.

In 1964, the City of New York adopted an Urban Renewal Plan for an area known as Bellevue South, from East 23rd to East 30th Streets in Manhattan, between First and Second Avenues. The plan, promulgated under title I of the Housing Act of 1949, provided for acquisition through condemnation of most of the land within the project area, and redevelopment for residential, institutional, public and semipublic use. The plan, as amended, called for "housing in the project area [which] shall be developed for occupancy by families of low and moderate income." Other permitted uses were commercial space, a public park, community facilities, professional schools, a health laboratory and institutional parking. Under the redevelopers' obligations provision, the plan required that "the redevelopers shall devote the land solely to the uses specified in this Urban Renewal Plan." The requirements of the plan were to "remain in effect for a period of forty (40) years beginning on the date of approval of this Urban Renewal Plan by the Board of Estimate." The Board of Estimate approved the Urban Renewal Plan on September 10, 1964.

In 1973, pursuant to a separate land disposition agreement (LDA) entered into by the City and defendant, limited-profit

housing company Henry Phipps Plaza West (HPPW), and approved by the Board of Estimate, the City conveyed to HPPW a parcel of land within the Bellevue South boundaries for the purpose of constructing a residential apartment complex. The complex was to consist of eight buildings and 890-plus residential units. Under section 504 (a) of the LDA, HPPW agreed, in a covenant running with the land, to "devote the Housing Site . . . to the uses specified in the Urban Renewal Plan." The covenant was "to run for a period of forty (40) years from the date of approval by The City of New York, of the Urban Renewal Plan . . . and [was to] expire on September 10, 2004."

Construction of the complex, which was completed in 1976, was financed through the Mitchell-Lama program (Private Housing Finance Law art II). As a Mitchell-Lama participant, HPPW received a state-assisted mortgage loan, a local real estate tax abatement and federal financial subsidies. In return, HPPW was subject to limitations on profits and regulation by the Division of Housing and Community Renewal (DHCR)— including regulations limiting tenants to persons whose incomes did not exceed specified ceilings, and limiting the rents that could be charged to tenants (*see e.g. Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 308 [2005]).

The Mitchell-Lama law states that a limited-profit housing company—like HPPW—that is aided by a state loan made after May 1, 1959 may "voluntarily be dissolved, without the consent of [the State DHCR Commissioner] not less than twenty years after the occupancy date upon the payment in full of the remaining balance of principal and interest due and unpaid upon the mortgage or mortgages and of any and all expenses incurred in effecting such voluntary dissolution" (Private Housing Finance Law § 35 [2]). Pursuant to a final no-objection letter issued by DHCR, the complex withdrew from the Mitchell-Lama program on July 29, 2003 (*see by contrast Matter of Columbus Park Corp. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 80 NY2d 19 [1992] [DHCR opposed withdrawal]). DHCR concluded that the beneficial owner of HPPW, defendant Bellevue South Associates, had complied with DHCR's as-of-right withdrawal regulations (9 NYCRR part 1750) and was entitled to dissolve

HPPW and withdraw the complex from the Mitchell-Lama program.*

Plaintiffs, a small group of tenants, commenced this action on April 15, 2003, seeking to enforce purported third-party beneficiary rights under the LDA. Specifically, plaintiffs maintained that the LDA required HPPW to remain in the Mitchell-Lama program until May 20, 2011 (40 years after May 20, 1971, the date of the third amended Urban Renewal Plan) or at least until September 10, 2004 (the expiration date of the covenant contained in section 504 [a] of the LDA). Plaintiffs also sought reformation of section 504 (a) of the LDA, to change the termination date of the covenant from September 10, 2004 to May 20, 2011, and further alleged that the LDA required HPPW to maintain the complex as housing for low- and moderate-income families. Plaintiffs' claims, as amended, were dismissed by Supreme Court on the ground that plaintiffs lacked standing, and the Appellate Division affirmed, as do we.

Parties asserting third-party beneficiary rights under a contract must establish

> "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost" (*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 336 [1983]).

As both Supreme Court and the Appellate Division correctly determined, plaintiffs failed to establish that the LDA was intended for their benefit. Indeed, section 505 of the LDA explicitly negates any intent to permit its enforcement by third

---

* A June 6, 2003 affidavit by Bellwest Management Corporation (the managing general partner of Bellevue South Associates) senior vice-president and general counsel Robert Pincus stated that of the 892 rental apartments, approximately 820 (92%) would be eligible, following withdrawal from Mitchell-Lama, to receive a subsidized rent under various plans. Six hundred sixty-four units would be eligible for section 8 enhanced vouchers (42 USC § 1437f [t]) administered by the New York City Department of Housing Preservation and Development on behalf of the United States Department of Housing and Urban Development. An additional 182 units would be eligible for a rental discount. On January 31, 2004, a settlement agreement was reached by the Tenants' Association and defendants. That agreement, providing for various lease options (including the section 8 enhanced voucher plan) was binding on those tenants in good standing who signed a tenant acceptance form.

parties such as plaintiffs. We therefore conclude that plaintiffs lack standing to bring this action.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, GRAFFEO and R.S. SMITH concur; Judge READ taking no part.

Order affirmed, without costs, in a memorandum.