NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**BUCKHORN INC., AND SCHOELLER ARCA SYSTEMS, INC.,**
*Plaintiffs-Appellees,*

**v.**

**ORBIS CORPORATION,**
*Defendant-Appellant,*

**AND**

**ORBIS MATERIAL HANDLING INC.,**
AND **DOES 1 - 6,**
*Defendants.*

———————————

2012-1643

———————————

Appeal from the United States District Court for the Southern District of Ohio in No. 08-CV-0459, Judge Timothy S. Black.

———————————

Decided: September 19, 2013

———————————

PAUL GRANDINETTI, Levy & Grandinetti, of Washington, DC, argued for plaintiffs-appellees.

GASPARE J. BONO, McKenna Long & Aldridge LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were STEPHEN M. CHIPPENDALE and JOHN W. LOMAS, JR.

———————————

Before RADER, *Chief Judge,* O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Defendant ORBIS Corporation ("ORBIS") appeals the decision of the United States District Court for the Southern District of Ohio denying its motion for fees, costs, reasonable attorney fees, and expenses. In denying the motion, the district court found that a settlement and license agreement's fee provision did not apply when Plaintiffs allegedly had "no knowledge of the [settlement and license agreement] at the time the litigation was initiated." Further, the district court stated that it would be unconscionable to require Plaintiffs to pay fees and costs under that settlement and license agreement.

On appeal, ORBIS challenges the district court's rulings regarding the applicability and unconscionability of the fee-shifting provision in the settlement and license agreement. For the reasons below, we *reverse* the district court's denial, and *remand* for further proceedings.

BACKGROUND

In 1990, Plaintiff-Appellee Schoeller Arca Systems, Inc.'s ("Schoeller") predecessors-in-interest, Xytec Plastics, Inc. and Perstorp Xytec, Inc. (collectively, "Xytec") filed a patent infringement action regarding certain bulk containers against ORBIS's predecessor-in-interest, Ropak Corporation ("Ropak"). In 1992, Xytec entered into a settlement and license agreement ("Ropak-Xytec

Agreement") with Ropak.[1] The Ropak-Xytec Agreement resolved the on-going litigation and provided Ropak with a license to four patents, including U.S. Patent No. 4,967,927 ("the '927 patent") along with any corresponding divisional, continuations, continuations-in-part, extensions, or reissues. One of the corresponding child patents of the '927 patent is U.S. Patent No. 5,199,592 ("the '592 patent").

In addition to the licensing provisions, the Ropak-Xytec Agreement included a fee-shifting provision titled "Resolution of Future Disputes" that states:

> In any litigation based on a controversy or dispute arising out of or in connection with this Agreement or its interpretation, the prevailing party shall be entitled to recover all fees, costs, reasonable attorney's fees, and other expenses attributable to the litigation.

Joint Appendix ("J.A.") at A951. The Ropak-Xytec Agreement also contained a provision governing the transfer of the rights granted:

> ROPAK agrees that, unless it receives the express written consent of XYTEC, it will not assign, sublicense, or transfer by way of acquisition or any other transaction or restructuring which would result in the transfer of the Licensed Rights to any entity who manufactures or sells material handling products except in connection with the sale or merger of substantially all of ROPAK with another such entity. This provision expressly and

---

[1] The Ropak-Xytec Agreement included a non-exclusive, fully paid-up, world-wide license for the duration of any and all patents included in the Licensed Rights. The Agreement also required Ropak to pay royalties totaling $1.4 million.

specifically prohibits ROPAK from selling, or in any other way divesting itself of all, or substantially all, of its non-material handling business, and then executing the transfer described above. As to a transfer of rights to any entity which at the time of the transfer does not compete with XYTEC in the material handling market, no such written consent is required, provided that the transfer of these rights includes a transfer of substantially the entirety of ROPAK's material handling business.

*Id.*

In 2000, Ropak transferred its entire materials handling business, including its rights under the Ropak-Xytec Agreement, to Linpac Materials Handling, Inc. ("LMH"). In 2006, ORBIS acquired LMH. After the acquisition, LMH changed its name to Orbis Corporation Material Handling, Inc. ("OMH").

In 2007, Schoeller licensed several patents, including the '592 patent, to Myers Industries, Inc. ("Myers"). This license agreement permitted Myers to commence infringement actions relating to the licensed patents. It also allowed Myers to transfer its rights or obligations under the agreement to a subsidiary without notice to Schoeller. Plaintiff-Appellee Buckhorn Inc. ("Buckhorn") is a wholly-owned subsidiary of Myers.

In 2008, Plaintiff Buckhorn sued Defendants ORBIS, OMH, and Does 1 through 6 (collectively, "Defendants") for infringement of the '592 patent. Defendants moved to dismiss the initial complaint for lack of standing as Buckhorn was only a licensee, not the patent owner. To prevent dismissal for lack of standing, Buckhorn joined the patent owner, Schoeller, through the filing of an amended complaint. In their answer, ORBIS and OMH asserted their rights under the Ropak-Xytec Agreement as an

affirmative defense. In particular, the eleventh affirmative defense[2] regarding OMH stated:

> Because Orbis Material Handling, Inc. f/k/a Linpac Materials Handling, Inc. is a successor-in-interest to Ropak Corporation, a licensee of U.S. Patent No. 4,967,927 and its progeny, of which U.S. Patent No. 5,199,592 is one, under a Settlement and License Agreement dated September 15, 1992 between Ropak Corporation and Xytec Plastics, Inc. and Perstorp Xytec, Inc., Orbis Material Handling, Inc. f/k/a Linpac Materials Handling, Inc. has been licensed and permitted and is licensed and permitted to make, use and sell products in the United States and throughout the world covered under U.S. Patent No. 5,199,592 for the duration of the patent.

---

[2] The Answer also included a similar twelfth affirmative defense regarding ORBIS:

> Because Orbis Corporation is a successor-in-interest to Ropak Corporation, a licensee of U.S. Patent No. 4,967,927 and its progeny, of which U.S. Patent No. 5,199,592 is one, under a Settlement and License Agreement dated September 15, 1992 between Ropak Corporation and Xytec Plastics, Inc. and Perstorp Xytec, Inc., Orbis Corporation has been licensed and permitted and is licensed and permitted to make, use and sell products in the United States and throughout the world covered under U.S. Patent No. 5,199,592 for the duration of the patent.

Answer to Amended Complaint at 11, *Buckhorn Inc. v. Orbis Corp.*, No. 3:08-CV-0459 (S.D. Ohio Oct. 2, 2009), ECF 22.

Answer to Amended Complaint at 10–11, *Buckhorn Inc. v. Orbis Corp.*, No. 3:08-CV-0459 (S.D. Ohio Oct. 2, 2009), ECF 22.

On December 31, 2009, OMH merged into ORBIS, thereby purporting to transfer all of OMH's assets to ORBIS, including its rights under the Ropak-Xytec Agreement. On April 6, 2010, the '592 patent expired.

On November 22, 2011, the district court granted ORBIS's motion for partial summary judgment regarding its affirmative license defense, which resolved most of the Plaintiffs' infringement suit in ORBIS's favor. In granting the motion, the district court found that ORBIS was licensed as the successor-in-interest to rights under the Ropak-Xytec Agreement for the '592 patent and that the transfer of those rights to ORBIS was consistent with the transfer provision of the Ropak-Xytec Agreement. The district court then dismissed Buckhorn's complaint for patent infringement with prejudice for lack of standing, which resolved the remainder of the case in ORBIS's favor. The district court entered judgment for ORBIS, and deemed ORBIS the prevailing party. Plaintiffs chose not to appeal those decisions.

ORBIS then timely moved for fees and costs from Schoeller pursuant to the fee-shifting provision of the Ropak-Xytec Agreement. The district court denied ORBIS's motion, stating that this "case cannot be a litigation based on a controversy or dispute arising out of or in connection with the License when Plaintiffs clearly had no knowledge of the License at the time the litigation was initiated." J.A. at A22. The district court also found that enforcing the fee-shifting provision would be unconscionable.

ORBIS appeals that ruling to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

## I. Standard of Review

Generally, interpretation of a settlement agreement is not an issue unique to patent law, even if arising in the context of a patent infringement suit. *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999) (citations omitted). For issues not unique to patent law, we apply the law of the appropriate regional circuit.

As the Ropak-Xytec Agreement expressly states that the agreement shall be governed by and construed under the laws of the State of California, this Court, as would the United States Court of Appeals for the Sixth Circuit, applies California contract law principles. *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.,* 871 F.2d 1082, 1085 (Fed. Cir. 1989); *Tele-Save Merch. Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122-24 (6th Cir. 1987) (providing that Ohio's choice-of-law generally applies the law of the state chosen by the parties to govern in a contract). Under California state law, contracts are interpreted without deference on appeal. *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1332 (Fed. Cir. 2009) (citation omitted). Further, whether contracts, or provisions thereof, are unconscionable ultimately is a question of law. *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (Cal. Ct. App. 1996).

## II. Fees Under the Ropak-Xytec Agreement

### A. Applicability of Fee Provision and Alleged Knowledge Requirement

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." CAL. CIV. PROC. CODE § 1021 (West 2013). Under California law, a contract may be the basis for an award of fees to a prevailing party for a tort related to a contract when the type of claim is within

the scope of the provision. *Gil v. Monsano*, 121 Cal. App. 4th 739, 743 (Cal. Ct. App. 2004). Here, the fee provision entitled the prevailing party to an award of fees and costs "[i]n any litigation based on a controversy or dispute arising out of or in connection with this Agreement or its interpretation." J.A. at A951.

To determine whether a contract permits the award of fees, we review its terms in view of California principles of contract interpretation. Under California statutory rules of contract interpretation, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." CAL. CIV. CODE § 1636 (West 2013). For contracts reduced to writing, "the intention of the parties is to be ascertained from the writing alone." *Id.* § 1639. Further, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." *Id.* § 1638. In addition, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." *Id.* § 1644.

The district court erred by denying ORBIS's motion for fees and costs based solely on the fact that the Buckhorn plaintiff was unaware of the Ropak-Xytec Agreement when it instituted the infringement action against ORBIS and OMH.[3] Apparently, the trial court believed that an

---

[3] While the trial court repeatedly referred to the "Plaintiffs'" lack of knowledge, Schoeller does not contend it lacked knowledge of the Ropak-Xytec Agreement; it only denied being aware that the agreement covered the '592 patent. In fact, Schoeller produced the Ropak-Xytec Agreement in its initial productions during discovery and produced documents and witnesses reflecting knowledge of the agreement prior to the litigation. Thus, while we address whether knowledge of the agreement at the time

action could only arise out of the license agreement if the action included an express attempt to enforce or rescind it. While the district court conceded that "the express language of the provision does not state that Plaintiffs required knowledge of the License when the litigation was initiated," it nevertheless found that "[t]his case cannot be a litigation based on a controversy or dispute arising out of or in connection with the License *when Plaintiffs clearly had no knowledge* of the License at the time the litigation was initiated." J.A. at A22 (emphasis added). We disagree with the district court that knowledge at the time the litigation was initiated is a necessary prerequisite to the right to fees under the Ropak-Xytec Agreement.

The "clear and explicit" language of the fee provision does not require knowledge of either the Agreement or the scope of rights thereunder at the time the litigation was initiated. *See* CAL. CIV. CODE § 1638. The Ropak-Xytec Agreement makes clear that the parties intended to resolve both current and future patent disputes with respect to the invention claimed in the '927 patent and its progeny. With respect to future disputes, the parties explicitly included a section titled "Resolution of Future Disputes," which provided a reciprocal fee-shifting provision applying "[i]n any litigation based on a controversy or dispute arising out of or in connection with this Agreement or its interpretation." J.A. at A951. We find this fee provision very broad and the trial court's interpretation of it too narrow.

Specifically, we find that the trial court failed to give effect to the "in connection with" language in the fee provision. While it is true that the litigation at issue here

---

of filing is a prerequisite to enforcement of rights under the fee provision, the only plaintiff with obligations under the fee provision *did* have knowledge of the agreement at all relevant times.

was not a direct action under the Ropak-Xytec Agreement, it is just as true that this litigation related to the very intellectual property rights addressed in that Agreement. And, the district court concluded that it was the existence of the license agreement which resolved the parties' dispute regarding their respective rights as to that intellectual property.

Here, Plaintiffs asserted infringement of the '592 patent against Defendants. In the Answer, Defendants raised an affirmative defense alleging that ORBIS and OMH were licensed under the Ropak-Xytec Agreement and that the Agreement covered rights under the '592 patent. After the district court interpreted the Ropak-Xytec Agreement, it granted ORBIS's motion for summary judgment regarding its affirmative license defense. The district court acknowledged in its decision that the resolution of the Ropak-Xytec Agreement "eliminated all but four of the more than fifty accused products from this case, abrogated constitutional standing for Plaintiffs' remaining claims against those four remaining products, and induced the dismissal of Plaintiffs' entire claim in Orbis's favor." J.A. at A21. As the language of the fee provision is "clear and explicit," this action fell within the fee provision as a "litigation based on a controversy or dispute arising out of *or in connection with* [the Ropak-Xytec Agreement] or its interpretation." *See* CAL. CIV. CODE § 1638; J.A. at A951 (emphasis added). It is clear, moreover, given the parties' desire to resolve future disputes via the license agreement that the fee provision applies equally to litigations where the license is raised as a defense. *See Thompson v. Miller*, 112 Cal. App. 4th 327, 335-37 (Cal. Ct. App. 2003) (finding a broad fee provision to allow an award based on the assertion of a defense).

Consequently, as the prevailing party in a "litigation based on a controversy or dispute arising out of or in connection with [the Ropak-Xytec Agreement] or its interpretation," ORBIS is entitled to recover "all fees,

costs, reasonable attorney fees, and other expenses attributable to the litigation."

### B.  Enforcing the Fee Provision
### Is Not Unconscionable

Under California law, an unconscionable contract ordinarily involves both a procedural and a substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 689–90 (Cal. 2000).  Determining unconscionability requires the application of a "sliding scale" between procedural and substantive unconscionability.  *Id.* at 690. Further, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract."  CAL. CIV. CODE § 1670.5(a) (emphasis added); *see also Am. Software*, 46 Cal. App. 4th at 1391 ("[t]he critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties-not whether it is unconscionable in light of subsequent events").

In denying fees and costs, the district court found that "[i]t would be unconscionable to require Plaintiffs to pay fees and costs under the License, as Plaintiffs were not even given a copy of the License until May 28, 2010, over 18 months after the case was filed."  J.A. at A22.  It also stated that applying the fee provision "would be unconscionable given the timeline and facts of this case," noting the distinction from other cases based on Plaintiffs' alleged lack of awareness of the Ropak-Xytec Agreement as of the filing of the lawsuit.  *Id.*  The district court erred by basing its finding of unconscionability on events taking place *after* Ropak and Xytec entered into their agreement rather than *at the time* they entered it.  As a determination of unconscionability considers factors at the time the

contract was made, the district court erred by considering subsequent events. *See* CAL. CIV. CODE § 1670.5(a)

An analysis of events surrounding the time the parties entered into the contract shows that the fee provision was not unconscionable; indeed, Schoeller does not seriously contend that it was. In assessing the procedural element, we find no oppression or surprise due to unequal bargaining power. *See Armendariz*, 6 P.3d at 690. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Ct. App. 1982) (citations omitted). "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*. The Ropak-Xytec Agreement involved negotiations between sophisticated business parties that worked out a six-page settlement and license agreement involving multiple patents, royalty payments over a million dollars to Schoeller's predecessor-in-interest, and a reciprocal fee provision to resolve future disputes. As such, we determine that the procedural inquiry provides little support for a finding of unconscionability.

Turning to the substantive inquiry, we see nothing about the fee shifting contemplated in the fee provision that "shock[s] the conscience." *Am. Software*, 46 Cal. App. 4th at 1391. The Ropak-Xytec Agreement resolved a lengthy patent litigation between sophisticated business parties, resolved future disputes relating thereto, and included a reciprocal fee-shifting provision. As the fee provision is reciprocal, Appellees would have been able to collect fees and costs if they were the prevailing party.

Appellees' primary argument in support of the trial court's unconscionability finding is that ORBIS and OMH were in a better position than they to assess the validity

of the transfer of rights under the license agreement and that ORBIS and OMH did not timely provide Buckhorn and Schoeller with the information necessary to confirm the chain of transfer. Schoeller questioned ORBIS's right to rely on the license agreement as a defense to Plaintiffs' infringement claims, but asserts it was unable to fully assess the validity of its own position because ORBIS and OMH delayed the production of evidence regarding the changes in the corporate structure of their predecessors-in-interest.

Specifically, Schoeller focuses on the fact that the license agreement was only transferrable upon the express consent of Xytec except when "in connection with the sale or merger of substantially all of ROPAK with another such entity." J.A. at A951. Without the evidence to know whether this exception applied, Schoeller asserts, it could not know whether the transfer of rights under the license was valid or enforceable. These facts do not impact ORBIS's right to rely on the fee provision, however. Once it was determined that ORBIS received its rights under the Ropak-Xytec Agreement lawfully, its right to rely on the fee provision was established.

While dilatory conduct on the part of ORBIS during discovery may impact the reasonableness of the fee award, any discovery delays by ORBIS do not make its request to enforce its contractual right to fees "unconscionable." On remand, the district court may factor the conduct of ORBIS and OMH into its analysis of the reasonableness of any fee award; it may not, however, refuse to make an award given the unambiguous terms of the contract.

CONCLUSION

For the foregoing reasons, we reverse and remand for further proceedings.

**REVERSED AND REMANDED**