NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BUCKHORN INC.,**
*Plaintiff-Appellant*

**SCHOELLER ARCA SYSTEMS, INC.,**
*Plaintiff*

v.

**ORBIS CORPORATION,**
*Defendant-Appellee*

**ORBIS MATERIAL HANDLING INC., DOES 1 - 6,**
*Defendants*

---

2014-1711

---

Appeal from the United States District Court for the Southern District of Ohio in No. 3:08-cv-00459-TSB-MJN, Judge Timothy S. Black.

---

Decided: July 2, 2015

---

JUDY L. WOODS, Benesch, Friedlander, Coplan & Aronoff LLP, Indianapolis, IN, argued for plaintiff-

appellant. Also represented by PRISCILA A. ROCHA, Cleveland, OH.

GASPARE JOSEPH BONO, McKenna Long & Aldridge, LLP, Washington, DC, argued for defendant-appellee. Also represented by JOHN WILLIAM LOMAS, JR., STEPHEN M. CHIPPENDALE.

––––––––––––––––

Before LOURIE, PLAGER, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Orbis Corporation and Orbis Material Handling, Inc. (collectively, "Orbis"), the defendant and prevailing party in a patent infringement suit, seeks attorney's fees against Buckhorn, Inc. ("Buckhorn"), one of the plaintiffs in the infringement action. Buckhorn's co-plaintiff, Schoeller Arca Systems, Inc. ("SAS"), had previously been held liable to Orbis for fees pursuant to an agreement between it (SAS) and Orbis. Orbis argues that it is entitled to recover fees against Buckhorn under an indemnification provision in a patent licensing agreement (the "PLA") between Buckhorn and SAS. Orbis also relies on the district court's inherent power to award attorney's fees.

The district court awarded fees to Orbis against Buckhorn under the PLA. But Orbis cannot recover under the PLA because Orbis is neither a party to the PLA nor a third-party beneficiary. Moreover, the district court neither invoked nor had inherent power to award fees in this case. We therefore reverse the district court's award of fees to Orbis.

BACKGROUND

On December 12, 2008, Buckhorn filed suit against Orbis, alleging infringement of U.S. Patent No. 5,199,592

("the '592 patent"), relating to improved hinges on transportation containers. The '592 patent was not owned by Buckhorn. Rather, SAS owned the patent, and Buckhorn was the (purportedly) co-exclusive licensee of the patent under the PLA. The license granted under the agreement was described as co-exclusive because SAS retained the right to practice the patent as well.[1] The agreement contained an indemnity clause, under which Buckhorn would be obligated to "pay all costs and expenses associated with" SAS' cooperation if Buckhorn "require[d] [SAS'] cooperation in the maintenance of [an] infringement action." J.A. 93 § 3.03. Orbis moved to dismiss the complaint brought by Buckhorn on standing grounds; in order to avoid dismissal, SAS joined the suit, and Buckhorn and SAS filed a joint amended complaint.

SAS had previously granted Orbis a license to use the same patent. That license was granted pursuant to a Settlement and License Agreement entered into on September 15, 1992 ("the RX agreement"). Buckhorn was apparently unaware of this license when it commenced the infringement suit against Orbis.[2] The RX agreement contained a fee provision clause:

---

[1] The PLA was originally between SAS and the parent company of Buckhorn, Myers Industries, Inc. ("Myers"). Myers subsequently transferred the agreement to Buckhorn. It is undisputed that Buckhorn is now a party to the PLA. For simplicity, in this opinion we will omit chain-of-title details with respect to the agreements in question, since they are irrelevant to the issues before us. We will thus refer to the parties to the various agreements as SAS, Orbis, and Buckhorn.

[2] Indeed, SAS expressly warranted to Buckhorn in the PLA that it was the "owner of the entire right, title

> In any litigation based on a controversy or dispute arising out of or in connection with this Agreement or its interpretation, the prevailing party shall be entitled to recover all fees, costs, reasonable attorneys fees, and other expenses attributable to the litigation.

J.A. 164. Buckhorn was not a party to the RX agreement.

On November 22, 2011, the district court granted summary judgment of non-infringement in favor of Orbis because Orbis was licensed under the RX agreement.

Orbis subsequently requested fees against SAS and Buckhorn. It originally relied on the RX agreement's fee provision and 35 U.S.C. § 285. The district court denied the fee request. With respect to § 285, the district court declined to award fees because the case was not "exceptional" and "both sides contributed to the dilatory tactics, discovery disputes, and frivolous motions for sanctions." J.A. 211, 213. With respect to the RX agreement, the district court concluded that the fee provision did not apply because the litigation was not "based on a controversy or dispute arising out of or in connection with the License" and that it would be unconscionable, in light of the amount of time it took Orbis to produce the document, to award fees under it. J.A. 203.

Orbis appealed and challenged only the denial of fees under the RX agreement. Although Orbis listed both SAS and Buckhorn as appellees, Orbis expressly admitted in its briefing before this court: "Buckhorn filed the Initial Complaint, but [it] is not a party to the [RX agreement]. Orbis does not argue in this appeal that Buckhorn is liable under the Fee Provision [of the RX agreement]."

---

and interest in and to the Licensed Patents." J.A. 93 § 5.02.

Brief for Appellant at 21, *Buckhorn Inc. v. Orbis Corp.*, 547 F. App'x 967 (Fed. Cir. 2013) (No. 2012-1643). We agreed that Buckhorn had no liability under the RX agreement. *See Buckhorn*, 547 F. App'x at 971 n.3. We determined that SAS was liable to pay Orbis' fees under the RX agreement because the language was broad enough to cover infringement disputes arising out of the licensed patents and because an award of fees was not unconscionable. *Id.* at 971–73. We remanded for the district court to determine a reasonable fee award under that agreement. *Id.* at 974.

On remand, Buckhorn moved to be dismissed from the case, arguing that the remand proceedings only pertained to the amount of SAS' liability under the RX agreement. In opposition, Orbis for the first time argued that Buckhorn was liable under the PLA. Although the district court acknowledged that "[t]he only remaining issue being litigated is the request for attorney fees by Defendant Orbis pursuant to the [RX] [a]greement," J.A. 258, the district court refused to dismiss Buckhorn. It reasoned that Buckhorn was liable to pay SAS' costs under the PLA, and that "[t]his contractual obligation established Buckhorn's ongoing significance to this lawsuit." J.A. 261. Additionally, the court reasoned that the "prosecution of this litigation has been controlled entirely by Buckhorn for its own benefit" and that "leav[ing] [SAS] to foot the bill" would be "not just." *Id.* (citing *DirectTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006)). Subsequently, the district court awarded Orbis $2,788,594.50 in attorney's fees. Buckhorn moved for clarification that it was not liable to Orbis under the RX agreement, which it argued was the only basis for Orbis' fee award. In the district court's clarification order, the district court acknowledged that "Buckhorn is not liable for attorneys' fees under the terms of the [RX] [a]greement." J.A. 43. However, the district court held Buckhorn liable to Orbis

under the PLA, even though Orbis was not a party to the PLA, because, according to the district court, "the unambiguous language of the PLA requires Buckhorn to pay any fees that may be ultimately awarded to Orbis." J.A. 44 (citation and punctuation omitted).

Buckhorn appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). The RX agreement states that it is governed by and construed under California law, and the PLA states that it is governed by and construed under New York law. In such circumstances, California law governs the RX agreement, and New York law governs the PLA. *See Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122–24 (6th Cir. 1987). Questions concerning interpretation of settlement and licensing agreements generally do not raise issues unique to patent law. *See Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999) (citations omitted). Thus, we apply the law of the appropriate regional circuit—here, the Sixth Circuit—to questions not governed by our law, California law, or New York law.[3]

---

[3]    Orbis argues that Buckhorn's failure to appeal the district court's order denying Buckhorn's motion to dismiss precludes us from reviewing the district court's decision to award fees under the PLA. This argument is frivolous. A denial of a motion to dismiss in a case such as this is not an interlocutory order appealable under 28 U.S.C. § 1292. *See Texas Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 898 (Fed. Cir. 2005) (denial of motion to dismiss not an interlocutory appeal under § 1292). Buckhorn appealed the award of fees, which the district court characterized as a "final enforceable judgment." J.A. 41 n.1. It is beyond dispute that:

DISCUSSION

Orbis cannot recover fees from Buckhorn under the RX agreement. Orbis disclaimed this theory in its previous appeal: "Buckhorn filed the Initial Complaint, but is not a party to the Settlement License. Orbis does not argue in this appeal that Buckhorn is liable under the Fee Provision." Brief for Appellant at 21, *Buckhorn*, 547 F. App'x 967 (No. 2012-1643). In our prior opinion, we described SAS as being "the only plaintiff with obligations under the fee provision" of the RX agreement. *Buckhorn*, 547 F. App'x at 971 n.3. After remand, the district court noted that "[a]t no point has any party suggested that Buckhorn is a party to or successor-in-interest to the [RX] [a]greement" and concluded that "[n]o contract was ever made between Buckhorn and Orbis. Accordingly, Buckhorn is not liable for attorney's fees under the terms of the [RX] [a]greement." J.A. 42–43. In its brief on this appeal, Orbis admits: "Buckhorn's joint-and-several liability does not rest on the [RX] [a]greement." Appellee's Br. 26.

Thus, the sole questions are whether the district court properly awarded fees against Buckhorn under the PLA and whether it could have awarded fees based on its inherent authority.

---

An appeal from the final judgment usually draws into question all prior nonfinal orders and all rulings which produced the judgment. Thus, a failure of the notice of appeal to specifically refer to a preliminary or interlocutory order does not prevent the review of that order on appeal. Having appealed from the judgment, the appellant is free to attack any nonfinal order or ruling leading up to it.

20 James Wm. Moore et al., *Moore's Federal Practice* § 303.21[3][c][iii] (3d ed. 2012).

To sue under a contract such as the PLA, a plaintiff must be a party to that contract or be an intended third-party beneficiary of the contract. *See* 13 *Williston on Contracts* § 37:9 (4th ed. 2013) ("[Unless they are intended beneficiaries,] third parties are neither bound by the contract nor otherwise subject to its terms . . . ."); 9 *Corbin on Contracts* §§ 44.1, 46.2 (rev. ed. 2007) (only contracting promisees or intended beneficiaries may sue to enforce a contract); *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.").

Our case law recognizes this fundamental requirement. In *Alpine County, California v. United States*, 417 F.3d 1366 (Fed. Cir. 2005), we noted: "In order to sue for damages on a contract claim, a plaintiff must have either direct privity or third-party beneficiary status." *Id.* at 1368. Similarly, in *Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003), we explained: "Without either direct privity or third-party beneficiary status," the plaintiff lacks standing to sue. *Id.* at 1352. So too in *Flexfab, L.L.C. v. United States*, 424 F.3d 1254 (Fed. Cir. 2005), we noted: "Because Flexfab was not a direct party to the contract between Capital City and DSCC, it has standing to enforce the contract only if it was an intended third-party beneficiary." *Id.* at 1259 (citing *Castle v. United States*, 301 F.3d 1328, 1339 (Fed. Cir. 2002)).

Most importantly, party or third-party beneficiary status is required under New York law, which governs the PLA. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 41 (1985) ("[I]ncidental beneficiar[ies can]not maintain an action for breach of contract."); *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786–87 (2006) (non-signatories who are not third-party beneficiaries lack standing to sue); *Artwear,*

*Inc. v. Hughes*, 615 N.Y.S. 2d 689, 692 (App. Div. 1994) ("Only an intended beneficiary of a contract may maintain an action as a third party; an incidental beneficiary may not.").

Orbis is not a party to the PLA. As described above, the PLA is an agreement between SAS and Buckhorn and requires Buckhorn to indemnify SAS under certain circumstances. Nor is Orbis an intended third-party beneficiary.

> Parties asserting third-party beneficiary rights under a contract must establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost."

*Mendel*, 6 N.Y.3d at 786 (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)); s*ee also Alpine*, 417 F.3d at 1368 ("Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status."); 13 *Williston on Contracts* § 37:1 ("[A] third party beneficiary contract arises when a promisor agrees with a promisee to render performance to a third party instead of to the promisee . . . ."); *id.* § 37:8 (citing cases showing that a party suing as a third-party beneficiary has the burden of showing that a contract provision was for his direct benefit). Orbis does not argue it was the intended beneficiary of the PLA. Nor could it have made such an argument. The PLA expressly stated:

> Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give to any party, other than the parties to this Agreement and their respective successors and

> permitted assigns, any rights or remedies under
> or by reason of this Agreement.

J.A. 94 § 7.05.

Alternatively, Orbis asserts that district courts have "broad discretion in fashioning joint-and-several liability," and that we should affirm the district court's award on that ground, *see* Appellee's Br. 23, even though the district court did not rely on it. Significantly, the district court did not purport to award fees under its inherent powers. The district court previously stated that fees were not appropriate under 35 U.S.C. § 285 or as sanctions under Fed. R. Civ. P. 11 because the case was not "exceptional" and "both sides contributed to the dilatory tactics, discovery disputes, and frivolous motions for sanctions." J.A. 211, 213. Focusing on the equities, the court additionally noted that an award of fees under the RX agreement would be "unconscionable." J.A. 203. The district court's award of fees was based on the PLA, not its "inherent power to impose sanctions for bad faith conduct." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

While it is true that federal courts may exercise "inherent power to sanction bad-faith misconduct," *id.*, "courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 269 (1975). Rather, "the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Chambers*, 501 U.S. at 47. This situation does not exist here, nor does Orbis argue that it does.

At oral argument, Orbis suggested it is unfair to prevent it from collecting fees from Buckhorn because it has

had a problem collecting its fee award against SAS, and Buckhorn is (allegedly) liable to SAS under the PLA agreement for any fees that Orbis collects against SAS. That is not a basis for ignoring basic principles of contract law. We note, moreover, that Orbis has no basis for complaining about unfairness when it has not pursued alternative remedies. For example, federal law allows a judgment creditor to seize any asset of a judgment debtor allowably seized under applicable state law. *See* Fed. R. Civ. P. 64(a) ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.").

Under Ohio state law, if SAS lacks sufficient tangible property to satisfy Orbis' judgment against it for attorney's fees, Orbis can potentially obtain an interest in SAS' chose in action against Buckhorn under the PLA. Ohio Rev. Code § 2333.01 provides:

> When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, . . . a money contract, claim, or chose in action, due or to become due to him, . . . shall be subject to the payment of the judgment by action.

The Ohio Supreme Court defines a "chose in action" as "the right to bring an action to recover a debt, money, or thing." *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 861 N.E.2d 121, 125 (Ohio 2006) (quoting *Black's Law Dictionary* 258 (8th ed. 2004)). "It embraces demands arising out of a tort, as well as causes of action originating in breach of a contract." *Id.* SAS has a potential indemnity claim against Buckhorn. Orbis has made no effort to acquire an interest in SAS' chose in action against Buckhorn.

The difference between allowing Orbis to directly recover from Buckhorn as the district court did and requiring Orbis to obtain an interest in SAS' claim against Buckhorn is significant in two respects. First, the PLA requires that the agreement "be governed by and construed in accordance with the laws of the state of New York" and that the parties bring suit in New York.[4] J.A. 95–96. Under the express terms of the agreement, an Ohio court cannot enforce the agreement. Second, Buckhorn has potential defenses to the indemnity provision. If the claim is pursued in New York court, Buckhorn will be able to raise those applicable defenses. *See Hopple v. Cleveland Disc. Co.*, 157 N.E. 414, 416 (Ohio Ct. App. 1927) (choses in action are "subject to defenses by the obligor to which the original owner [of the chose] was subject"); *Fairbanks, Jr. v. Sargent*, 9 N.E. 870, 875 (N.Y. 1887) (the acquirer "of a chose in action takes the interest [acquired] subject to all defenses, legal and equitable, of the debtor" (quoting *Bush v. Lathrop*, 22 N.Y. 535, 538 (1860))). We express no opinion on the relative merits of that hypothetical action.

We have considered Orbis' other arguments and find them to be wholly without merit.

CONCLUSION

For the foregoing reasons, the district court's award of fees against Buckhorn is reversed.

**REVERSED**

---

[4] Buckhorn and SAS are currently litigating issues relating to the PLA in the Southern District of New York. *See Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, Case No. 1:14-cv-07051-JFK (S.D.N.Y. filed Aug. 29, 2014).

COSTS

Costs to Buckhorn.