Piotr Wrobel and TOMASZ STANKIEWICZ, individually and on behalf of all other persons similarly situated who were employed by PMJ ELECTRICAL CORP., with respect to certain Public Works Projects Awarded by the NEW YORK CITY DEPARTMENT OF EDUCATION and/or performed work pursuant to the NEW YORK CITY RAPID REPAIR PROGRAM, Plaintiffs,

against
Shaw Environmental & Infrastructure Engineering of New York, P.C., BILTMORE GENERAL CONTRACTORS, INC., PMJ ELECTRICAL CORP., and SLSCO, L.P. d/b/a SULLIVAN LAND SERVICES, LTD., Defendants.


652382/2015 

Attorneys for Plaintiffs: Jack L. Newhouse and Michele A. Moreno of Virigina & Ambinder, LLP
Attorneys for Defendant SLSCO, L.P. d/b/a Sullivan Land Services, Ltd.: Victor Rivera, Jr. of Rich Intelisano & Katz, LLP


Saliann Scarpulla, J.

Defendant SLSCO, L.P. d/b/a Sullivan Land Services, Ltd. ("SLSCO") moves, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the first amended complaint of proposed class representative plaintiffs Piotr Wrobel ("Wrobel") and Tomasz Stankiewicz ("Stankiewicz") (collectively "Plaintiffs"), based on documentary evidence and for failure to state a cause of action.
Background
SLSCO is construction company based in Houston, Texas. On December 24, 2012, SLSCO entered into a contract (the "Prime Contract") with the New York City Department of [*2]Environmental Protection ("DEP") to provide home repairs as part of the New York City Rapid Repair Program (the "RRP"). Pursuant to the Prime Contract, SLSCO was to provide "labor, supervision, materials, and other associated equipment and costs required to safely restore heat, hot water, and power to and to make temporary exterior and internal repairs necessary to allow residents to inhabit [p]roperties assigned to [SLSCO]." Prime Contract, art. 3 [A]. SLSCO engaged various subcontractors to perform various parts of the Prime Contract, including defendant PMJ Electrical Corp. ("PMJ").
Under the Prime Contract, SLSCO agreed to comply with "all applicable Federal, State and local Laws, including but not limited to the payment of wages compliant with all requirements of . . . [Labor Law § 220]." Prime Contract, art. 31 [A]. Thus, in the Prime Contract the parties agreed that "al1 persons employed by Contractor and any Subcontractor in the manufacture or furnishing of the supplies, materials, or equipment, or the furnishing of work, labor, or services, used in the performance of this Contract shall be paid, without subsequent deduction or rebate unless expressly authorized by Law, not less than the sum mandated by Law. The Prime Contract also provided that it "shall not be deemed to create any new right of action in favor of third parties against [SLSCO] or [New York City]." Prime Contract, art. 50.
Wrobel and Stankiewicz, along with the other members of the proposed class, were employed by PMJ, a subcontractor to SLSCO, as well as by defendant Biltmore General Contractors, Inc. ("Biltmore"), on unrelated construction projects. Plaintiffs allege that, while working on the RRP projects, PMJ paid them "less than the prevailing rates of wages and supplements to which [p]laintiffs and the other members of the putative class were entitled." Am. Compl. ¶ 23. Plaintiffs also allege, upon information and belief, that the prevailing wage provisions of the Prime Contract were "incorporated by reference into the [p]ublic [w]orks [s]ubcontracts between [SLSCO] and PMJ." Am. Compl. ¶ 25.
Plaintiffs originally commenced this action against Biltmore, PMJ, and former defendant Shaw Environmental & Infrastructure Engineering of New York, P.C. ("Shaw"). I subsequently granted Plaintiffs' motion to add SLSCO as a defendant and serve an amended complaint. Plaintiffs then filed an amended complaint alleging breach of the Prime Contract and/or subcontracts against PMJ (first cause of action), breach of the Prime Contract against SLSCO and Biltmore (second cause of action), and a suretyship and Labor Law § 220-g claim against 20 John Doe bonding companies (third cause of action).
SLSCO moves to dismiss the second cause of action for breach of contract, the sole cause of action asserted against it in the amended complaint, in which Plaintiffs allege that SLSCO breached the Prime Contract by failing to ensure that PMJ paid Plaintiffs a prevailing wage. 
SLSCO argues that Plaintiffs' claim must be dismissed because the Prime Contract expressly precludes recovery by third party beneficiaries. Further, SLSCO argues that Plaintiffs may only recover as third party beneficiaries of a contract between a municipality and their employer, and SLSCO is not their employer. 
Plaintiffs also argue that, in the Prime Contract, SLSCO agreed to ensure that all employees, including subcontractors' employees, would be paid prevailing wages, and that upon a subcontractor's failure to do so, the Plaintiffs, as third-party beneficiaries of the Prime Contract, should be able to recover against SLSCO.
Discussion
The Labor Law was enacted to protect workers, see, e.g., Vasquez v Urbahn Assoc. Inc., [*3]79 AD3d 493, 499 (1st Dep't 2010) (Acosta and Freedman, JJ., dissenting in part). Thus, Labor Law § 220 (3) (a) provides that "[t]he wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined." Further, public works contracts "shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the wages herein provided." Id. Under Labor Law § 220, a laborer alleging that he/she has not been paid a prevailing wage is provided with a statutory mechanism with which to initiate an administrative enforcement proceeding to secure the prevailing wage.
New York courts have consistently interpreted Labor Law § 220 to provide the maximum protection to laborers, who are often in the least powerful bargaining position. Indeed, the Court of Appeals has stated that Labor Law § 220 "has as its entire aim the protection of workingmen against being induced, or obliged, to accept wages below the prevailing rate" and "must be construed with the liberality needed to carry out its beneficent purposes." Bucci v. Village of Port Chester, 22 NY2d 195, 201 (1968) (emphasis added).
To protect and preserve laborers' right to receive a prevailing wage, our courts have expansively viewed the remedies afforded laborers under Labor Law § 220. Thus, for example, in Wright v. Herb Wright Stucco, Inc., the Court of Appeals held that laborers have, in addition to the statutory remedy provided in Labor Law § 220, a continued common law right to sue their employer as a third-party beneficiary under a public construction contract. Wright v. Herb Wright Stucco, Inc., 50 NY2d 837, 839 (1980); see also Nawrocki v. Proto Const. & Dev. Corp., 82 AD3d 534, 536 (1st Dep't 2011) (same).
The contract here between SLSCO and the DEP contains a prevailing wage provision, and SLSCO does not dispute Plaintiffs' allegation that its contract with PMJ incorporated that provision by reference. See Am. Compl. ¶ 25. However, Plaintiffs breach of contract cause of action against SLSCO is not a typical third-party beneficiary claim asserted by a laborer against its employer for failure to pay prevailing wages under a public employment contract. Here, SLSCO was not Plaintiffs' employer. PMJ, a subcontractor of SLSCO, was Plaintiffs' employer. 
Plaintiffs nevertheless allege that they are third-party beneficiaries of SLSCO's promises, in Article 31 of the Prime Contract between SLSCO and DEP that:
Contractor [SLCO] shall strictly comply with all applicable Federal, State and local Laws, including but not limited to the payment of wages compliant with all requirements of the Davis-Bacon Act (40 U.S.C. §§ 276a to 276a-7) as supplemented by the U.S. Department of Labor regulations (29 C.F.R. Part 5), NY Labor Law sections 220 or 230, Administrative Code section 6-109, and City Executive Order 102 (2007);
* * * * *
[A]l1 persons employed by Contractor and any Subcontractor in the manufacture or furnishing of the supplies, materials, or equipment, or the furnishing of work, labor, or services, used in the performance of this Contract shall be paid, without subsequent deduction or rebate unless expressly authorized by Law, not less than the sum mandated by Law.

Under New York law, "[p]arties asserting third-party beneficiary rights under a contract must establish (1) the existence of a valid and binding contract between other parties, (2) that the [*4]contract was intended for their benefit and (3) that the benefit to them is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost * * *." Mendel v. Henry Phipps Plaza West, Inc., 6 NY3d 783, 786 (2006) (quotations, brackets and citation omitted). SLSCO claims that because Plaintiffs are not its employees, but the employees of one of its subcontractors, SLSCO's promise in the Prime Contract to pay a prevailing wage does not extend down to Plaintiffs. SLSCO concludes that Plaintiffs are not direct, but, at most, incidental beneficiaries of SLSCO's agreement in the Prime Contract to pay a prevailing wage.
In opposition, Plaintiffs argue that there are many cases in which the employees of a subcontractor have successfully sued the general contractor for failure to pay prevailing wages as third-party beneficiaries of the prime contract between the public entity and the general contractor. However, most of the cases cited by Plaintiffs do not directly address that issue. For example, in Wysocki v Kel-Tech Construction, Inc., Index No. 603591/2003 (Sup. Ct. NY County Apr. 8, 2005) (Solomon, J.), Justice Solomon addressed whether arbitration under a collective bargaining agreement is a precondition for the laborer's assertion of a third-party beneficiary claim under a public construction contract. There was simply no discussion of whether the employees of a subcontractor were direct and immediate third-party beneficiaries of the prime contract.
Other cases cited by Plaintiffs state, without discussing, that some of the defendants are subcontractors, but again these cases do not specifically address whether subcontractors are direct and immediate third-party beneficiaries of the prime contract. See, e.g. Ortiz v. J.P. Jack Corporation, Index No. 6989/1998 (Sup. Ct., Queens Co. 1999); Ansah v. A.W.I. Security & Investigation, Inc., 2014 NY Misc. LEXIS 1690 (Sup. Ct. NY Co. Apr. 9, 2014), aff'd 129 AD3d 538 (1st Dep't 2015). Moreover, none of these cases discuss whether the public entities' and contractors' specific disclaimer of any third-party beneficiary rights may be enforced.
Plaintiffs and SLSCO cite two cases which do squarely address the issue of whether subcontractors are direct, or merely incidental, third-party beneficiaries under a prime contract between a public entity and a general contractor. In each case the laborer plaintiffs were subcontractors of a prime contract between the general contract and the public entity, and the prime contract contained language incorporating the requirements of Labor Law § 220. The courts in these two cases came to opposite conclusions. Compare Barragan-Aquino v. East Port Excavation & Utilities Contractors, Inc., 2014 WL 1117269 (E.D.NY Mar. 18, 2014) with Lane v KBC Concrete Corp., Index No. 100627/2011, (Sup. Ct. NY County Feb. 4, 2016) (Kalish, J.).
In Barragan-Aquino v. East Port Excavation & Utilities Contractors, Inc., 2014 WL 111 7269 (E.D.NY Mar. 18, 2014), Judge Feuerstein acknowledged that the employees of the general contractor could sue as third-party beneficiaries under the prime contract. Id. at 7. She nevertheless found that:
Plaintiffs cannot state a third-party beneficiary breach of contract claim against the [contractor] defendants because, inter alia, the [contractor] defendants, who were not plaintiffs' employer, had no duty under the contract with the [public entity] to compensate plaintiffs if they were not paid prevailing wage rates and supplemental benefits by their employer. Accordingly, plaintiffs were not the intended beneficiaries of the [public] Contract; at most they were incidental beneficiaries thereunder.
[*5]Barragan-Aquino v. East Port Excavation & Utilities Contractors, Inc., 2014 WL 111 7269 at 8.[FN1]

Judge Kalish of the Supreme Court, New York County, came to the opposite conclusion in Lane v KBC Concrete Corp. Index No. 100627/2011 (Sup. Ct. NY County, Feb. 4, 2016) (Kalish, J.). Judge Kalish held that:
[W]here the Labor Law requires the inclusion of a provision for payment of the prevailing wage in a labor contract between a public agency and a contractor, the employees of subcontractors are de facto third-party beneficiaries to said public contracts for the purpose of making common law breach of contract claims against the general contractor for underpayment. . . [S]aid employees are not required to make any additional showing nor plead any additional facts to establish their status as third-party beneficiaries under the public contracts for the purpose of making breach of contract claims against the general contractor for underpayment.
Lane, Index No. 100627/2011, at 13. Further, Judge Kalish held that the general contractor could not extinguish the subcontractors' employees' right to sue for a prevailing wage simply by contracting around that right with a negation clause. Id. 14.
First, the general contractor has a duty, under Labor Law § 220, to commit its subcontractors to paying a prevailing wage. To permit the general contractor to discharge that duty simply by subcontracting out work and inserting a prevailing wage provision in the subcontract, does not give sufficient teeth to the Labor Law's protections and the general contractor's obligations.
Second, the Labor Law itself makes clear that the subcontractors' employees should also be beneficiaries of the general contractor's obligation to ensure that laborers on the public project are paid a prevailing wage. Thus, Labor Law § 220 specifically provides that the prime contract "shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the wages herein provided." Emphasis supplied.
Third, as between the general contractor, who may choose with whom it subcontracts, and the laborers under the subcontract, the Labor Law makes clear that the general contractor should bear the risk that it has hired a subcontractor who fails to pay a prevailing wage.
Assuming that the subcontractors have a right to seek a prevailing wage as against SLSCO as third-party beneficiaries of the Prime Contract, SLSCO has nevertheless attempted to contractually eliminate that right. The Prime Contract contains a negation clause, which provides that the Prime Contract "shall not be deemed to create any new right of action in favor of third parties against [SLSCO] or [New York City]."
As stated above, New York has a strong public policy in favor of enforcing Labor Law § 220, the purpose of which is to ensure that each laborer is paid "not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work ... is performed." Labor Law § 220(3). Indeed, Labor Law § 220 has been portrayed as "an attempt by the State to hold its territorial subdivisions to a standard of social justice in their [*6]dealings with laborers, workmen, and mechanics." Austin v. City of New York, 258 NY 113, 117 (1932); De La Cruz v Caddell Dry Dock & Repair Co., Inc., 21 NY3d 530, 535 (2013). A negation clause like the one in the Prime Contract would plainly circumvent New York's strong public policy, at least to the extent that it is interpreted to eliminate the common law right of a laborer to sue for payment of a prevailing wage.
It is well settled that New York courts will not enforce a contractual provision that violates public policy. See City of New York v. 17 Vista Associates, 84 NY2d 299, 306 (1994); Szerdahelyi v. Harris, 67 NY2d 42, 48 (1986); McConnell v. Commonwealth Pictures Corp., 7 NY2d 465, 469 (1960). Like Judge Kalish, I find that enforcement of a negation clause like the clause in the Prime Contract, to eliminate the Plaintiffs' common law right as third-party beneficiaries of the Prime Contract to enforce the prevailing wage requirement, is against strong New York public policy. I therefore decline to enforce the provision. 
For the foregoing reasons, I find that the Plaintiffs may assert a breach of contract claim against SLCSO as third-party beneficiaries of the Prime Contract.
Accordingly, it is hereby
ORDERED that the motion of defendant SLSCO, L.P. d/b/a Sullivan Land Services, Ltd., to dismiss the amended complaint against it is denied. SLSCO, L.P.
d/b/a Sullivan Land Services, Ltd. is directed to serve an answer to the amended complaint within twenty days of the date of this order.
Dated:May 9, 2017
Hon. Saliann Scarpulla, JSC



Footnotes

Footnote 1: In addition, Judge Feuerstein held that a negation clause in the prime contract expressly disclaiming any intent on the parties' part to create a benefit for any third-party was enforceable against the subcontractor employees. Id. at 8-9.