[Civ. No. 28402. Fourth Dist., Div. One. Jan. 27, 1984.]

LEONARD CHRETIAN, Plaintiff and Respondent, v.
DONALD L. BREN COMPANY, Defendant and Appellant.

COUNSEL

Haskins, Nugent, Newnham, Kane & Zvetina and Raymond F. Zvetina for Defendant and Appellant.

Marsh & Graves and Edward E. Marsh, Jr., for Plaintiff and Respondent.

OPINION

**WIENER, J.**—The sole question is whether the trial court ruled correctly in deciding a provision for compensation in the employment agreement between defendant Donald L. Bren Company (Bren), a real estate developer, and its salesperson plaintiff Leonard Chretian was unconscionable and therefore unenforceable. As we shall explain, we conclude the provision is not adhesive, oppressive or substantively unreasonable and not unconscionable. Accordingly, we modify the $18,938.82 judgment in favor of Chretian to $2,000 and, as modified, affirm the judgment.

Bren sells homes to the public through commissioned salespersons. Bren's contract with its salespersons, including Chretian, provides for two separate commissions. The first commission of .65 percent of the sales price of the house is earned "for *obtaining* a fully executed purchase and sales agreement which subsequently closes escrow." (Italics added.) The second commission of .35 percent of the sales price of the house is "for *servicing* the sale transaction through successful close of escrow." (Italics added.) The contract further states that upon termination of his employment the salesperson is entitled to both commissions for escrows closed before the termination. For transactions pending at that date, however, only the .65 percent commission will be paid upon the close of escrow. The "[c]ommission for *servicing* the sale transaction through successful close of escrow . . . shall not be deemed earned or payable with respect to any transaction pending as of the date of termination of Salesperson." (Italics added.)

After resigning and receiving only his .65 percent commissions, Chretian filed suit to recover all sums due him including $16,938.82 representing the .35 percent commissions for property sales on which escrow was pending when he resigned. At trial Bren conceded liability of $2,000 for money improperly withheld for the late closing of an escrow on property Chretian purchased. The court found the compensation agreement was not a contract of adhesion but Chretian's loss of $16,938.82 in commissions represented a forfeiture, unconscionable as a matter of law and therefore unenforceable as being contrary to public policy. Judgment was entered accordingly and this appeal by Bren ensued.

■ Chretian does not challenge the court's finding the employment contract is not a contract of adhesion. Regardless of this finding, determining the adhesive nature of a contract is only "the beginning and not the end of the analysis insofar as enforceability of its terms is concerned." (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 357 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) ■ A contract of adhesion may be fully enforceable according to its terms absent additional factors which render it otherwise. (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-820 [171 Cal.Rptr. 604, 623 P.2d 165].) One such factor is if the contract provision, considered in its context, is unduly oppressive or "unconscionable." (*Id.,* at p. 820.)

■ Even nonadhesive contracts, if unconscionable, may be denied enforcement as a matter of equity. Where the court finds "any clause of [a] contract to have been unconscionable at the time it was made the court . . . may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).)

■ The statute does not attempt to precisely define "unconscionable." "Nevertheless, '[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' [Citation.] Phrased another way, unconscionability has both a 'procedural' and a 'substantive' element. [Citations.]" (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 485-486 [186 Cal.Rptr. 114].)

■ Here, no procedural oppression or surprise exists. The court found Chretian was not required to accept the contract or reject it. The court was satisfied Chretian had sufficient bargaining power to negotiate his terms of compensation. The court also found Chretian read and understood the contract negating the possibility of surprise.

■ Because an actual agreement between the parties will be denied enforcement only where the negotiated terms are substantively unreasonable, we must evaluate the substantive aspects of the contract as of the time the contract was formed. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 487.) ■ "[A] contract is largely an allocation of risks between the parties, and therefore . . . a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner. [Citations.] But not all unreasonable risk allocations are unconscionable; rather, enforceability of the clause is tied to the procedural aspects of unconscionability [citation] such that the greater the unfair surprise or inequality of bargaining power, the less unreasonable the risk reallocation which will be tolerated. [Citation.]" (*Ibid.*)

■ The .35 percent commission was compensation for servicing the sales transaction through close of escrow. Chretian argues the salesperson's job was perfunctory and unneeded in this regard. Examined prospectively, we conclude otherwise.

There is an identity of interest between Bren and Chretian. Both are desirous of a successful marketing program resulting in the prompt and profitable sales of residences developed by Bren. The degree of the commonality of their interests is related, however, to the capital investment by each. Obviously Bren has more at stake with the potential of making greater profits. Each purchaser's satisfaction with a Bren-produced house generates not only a defined economic return for Bren but an intangible amount of goodwill essential to Bren's continued long range business success. The salesperson, in contrast, has a more limited economic interest. He or she is concerned with generating commissions from sales of houses and then moving on to other real estate projects, not necessarily those developed by Bren. Thus, Bren negotiated the second commission as a financial incentive for

its salespersons to remain with Bren during pendency of escrows obtained by that salesperson. If the entire commission were to be deemed earned by merely obtaining buyers, the burden of servicing those buyers pending escrow would fall on Bren's other salespersons unfamiliar with the earlier transaction who would receive nothing for their efforts. It is doubtful whether this practice would be satisfactory to either Bren, the purchaser, or the remaining salesperson saddled with this additional unremunerative work. Moreover, "buyer's remorse" frequently causes more careful examination of contract documents raising questions about the truthfulness of representations by the salesperson in making the sale. It is reasonable for principals to want their agents to remain available to respond to the inquiries of anxious purchasers. There is also no suggestion here that Chretian was paid an amount which was not commensurate with the amount of work he actually performed. The front end commission of .65 percent appears to be, and Chretian does not argue otherwise, sufficient compensation for the services Chretian rendered in obtaining the sale.

We therefore hold that since this nonadhesive contract is not marred by procedural infirmity and the .35 percent commission for salespersons still employed at the closing is substantively reasonable, the contract is not unconscionable.

The judgment of $18,938.82 is modified to $2,000 and, as modified, the judgment is affirmed.

Brown (Gerald), P. J., and Work, J., concurred.