[No. A071689. First Dist., Div. Five. June 28, 1996.]

AMERICAN SOFTWARE, INC., Defendant and Appellant, v. MELANE ALI, Plaintiff and Respondent.

## COUNSEL

Low, Ball & Lynch, H. Ann Liroff, Bruce Piontkowski, Ropers, Majeski, Kohn, Bentley, Wagner & Kane and Susan H. Handelman for Defendant and Appellant.

Hoffman, Finney & Klinedinst and Anna Mary E. Gannon for Plaintiff and Respondent.

## OPINION

**KING, J.**—The appellant, American Software, Inc., appeals from a decision of the trial court granting a former employee, respondent Melane Ali, unpaid commissions based upon software sales she generated while in American Software's employ but which were remitted by customers after she voluntarily severed her employment. The key issue in this appeal is whether a provision of Ali's employment contract which, generally speaking, terminates her right to receive commissions on payments received on her accounts 30 days after severance of her employment is unconscionable, and therefore, unenforceable. The trial court found that Ali was entitled to recover the disputed commissions because this contractual provision was unconscionable. We disagree and reverse.

### Facts

Ali was an account executive for American Software from September 5, 1991, to March 2, 1994. The employment relationship commenced after Ali was approached by a professional recruiter on behalf of American Software and was terminated when Ali voluntarily resigned because she had a job offer from one of American Software's competitors. Ali was hired to sell and market licensing agreements for software products to large companies. These products are designed to the customer's specifications for the purpose of integrating the customer's accounting, manufacturing, sales and distribution processes.

In exchange for her services, American Software agreed to pay Ali a base monthly salary plus a draw. If products were sold during the month, any commissions paid were reduced by the amount of the draw. However, the draw portion of the salary was paid regardless of whether or not the salesperson earned commissions to cover the draw. Any negative amount would be carried over from month-to-month until such time as the commissions were large enough to cover the previous draws, or until such time as the employment relationship was severed. If the amount of draws exceeded commissions at the time of termination, American Software would suffer the loss. At the time of her resignation, Ali's annual guaranteed salary, exclusive of commissions, was $75,000. Her base monthly salary was $3,333 per month and her nonrefundable draw was $2,917.

The terms and conditions of Ali's employment were set out in a written contract which was prepared by American Software. Ali reviewed the contract, and had an attorney, who she described as a "buddy," review it prior to employment. Of pertinence to the instant controversy, the contract included the specific circumstances under which Ali was to receive commissions after termination of employment with American Software. The employment agreement first states that "[c]ommissions are considered earned when the payment is received by the Company." It goes on to provide: "In the event of termination, the right of all commissions which would normally be due and payable are forfeited 30 days following the date of termination in the case of voluntary termination and 90 days in the case of involuntary termination."

Based on her testimony at trial, there is no question that Ali was aware of this provision prior to her execution of the agreement and commencement of work at American Software. She testified she reviewed the two-and-one-half-page contract for one-half hour and caused certain handwritten deletions and revisions to be made to it, most notably deleting a provision requiring her to reimburse American Software $5,000 for the recruiter's fee in the event that she terminated her employment within a year. Ali testified that she signed the employment contract even though she believed certain provisions were unenforceable in California.

After Ali left American Software's employment, she sought additional commissions in connection with transactions with IBM and Kaiser Foundation Health Plan. American Software received payment from both companies more than 30 days after Ali's resignation.

After Ali's claim for unpaid commissions was denied by the Labor Commissioner, she sought de novo review in the superior court. (Lab. Code,

§ 98.2.) The trial court awarded Ali approximately $30,000 in unpaid commissions after finding that the contract provision regarding postemployment commissions was unconscionable and thus, unenforceable. The trial court found the evidence "overwhelming that the forfeiture provision inures to the benefit of the party with superior bargaining power without any indication of a reason for tying such benefit to the timing of a payment, rather than to the service actually provided in completing the sale." American Software timely appealed.

### Discussion

In 1979, our Legislature enacted Civil Code section 1670.5, which codified the established doctrine that a court can refuse to enforce an unconscionable provision in a contract.[1] (For a review of the legislative history of Civ. Code, § 1670.5, see *IMO Development Corp.* v. *Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 459-460 [185 Cal.Rptr. 341].) While the term "unconscionability" is not defined by statute, the official comment explains the term as follows: "The basic test is whether, in the light of the general background and the needs of the particular case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise [citation] and not of disturbance of allocation of risks because of superior bargaining power." (Legis. committee com., Deering's Ann. Civ. Code (1994 ed.) § 1670.5, pp. 328-329.)

Most California cases analyze unconscionability as having two separate elements—procedural and substantive.[2] (See, e.g., *Shaffer* v. *Superior Court* (1995) 33 Cal.App.4th 993, 1000 [39 Cal.Rptr.2d 506]; *Vance* v. *Villa Park Mobilehome Estates* (1995) 36 Cal.App.4th 698, 709 [42 Cal.Rptr.2d 723].) Substantive unconscionability focuses on the actual terms of the agreement, while procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties. California courts generally require a showing of both procedural and substantive unconscionability at the time the contract was made. (See *A & M*

---

[1]The statute provides in pertinent part: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).)

[2]Our Supreme Court has noted that the division of the unconscionability analysis into procedural and substantive elements should lead to the same result as the analytical framework expressed in *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-820 [171 Cal.Rptr. 604, 623 P.2d 165]. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 925, fn. 9 [216 Cal.Rptr. 345, 702 P.2d 503].)

*Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 487 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) Some courts have indicated that a sliding scale applies—for example, a contract with extraordinarily oppressive substantive terms will require less in the way of procedural unconscionability. (*Ilkhchooyi* v. *Best* (1995) 37 Cal.App.4th 395, 410 [45 Cal.Rptr.2d 766]; *Carboni* v. *Arrospide* (1991) 2 Cal.App.4th 76, 83 [2 Cal.Rptr.2d 845]; *Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 768 [259 Cal.Rptr. 789].)

Indicia of procedural unconscionability include "oppression, arising from inequality of bargaining power and the absence of real negotiation or a meaningful choice" and "surprise, resulting from hiding the disputed term in a prolix document." (*Vance* v. *Villa Park Mobilehome Estates, supra,* 36 Cal.App.4th at p. 709.) Substantive unconscionability is indicated by contract terms so one-sided as to "*shock the conscience.*" (*California Grocers Assn.* v. *Bank of America* (1994) 22 Cal.App.4th 205, 214 [27 Cal.Rptr.2d 396], italics in original.) A less stringent standard of "reasonableness" was applied in *A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at pages 486-487. This standard was expressly rejected by Division Two of this court in *California Grocers Assn.* as being inherently subjective. (*California Grocers Assn., supra,* at p. 214.) We agree. With a concept as nebulous as "unconscionability" it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience.

The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events. (Civ. Code, § 1670.5.) Unconscionability is ultimately a question of law for the court. (*Ilkhchooyi* v. *Best, supra,* 37 Cal.App.4th at p. 411; *Vance* v. *Villa Park Mobilehome Estates, supra,* 36 Cal.App.4th at p. 709; *Patterson* v. *ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1663 [18 Cal.Rptr.2d 563].)

In assessing procedural unconscionability, the evidence indicates that Ali was aware of her obligations under the contract and that she voluntarily agreed to assume them. In her business as a salesperson it is reasonable to assume she had become familiar with contracts and their importance. In fact, in Ali's testimony, she indicated that as part of her responsibilities for American Software, she helped negotiate the terms of a contract with IBM representing over a million dollars in sales. The salient provisions of the employment contract are straightforward, and the terms

used are easily comprehensible to the layman. She had the benefit of counsel.[3] Nor is this a situation in which one party to the contract is confronted by an absence of meaningful choice. The very fact that Ali had enough bargaining "clout" to successfully negotiate for more favorable terms on other provisions evidences the contrary. She admits that she was aware of the postemployment commissions clause, but did not attempt to negotiate for less onerous terms.[4] In short, this case is a far cry from those cases where fine print, complex terminology, and presentation of a contract on a take-it-or-leave-it basis constitutes the groundwork for a finding of unconscionability.

Nor do we find substantive unconscionability. Ali's arguments of substantive unconscionability rest largely on events that occurred several years after the contract was entered into—her loss of sizable commissions on sales she had solicited during her employment but where payment was delayed for various reasons so that it was not received within 30 days after her departure. However, as indicated by the very wording of California's unconscionability statute, we must analyze the circumstances as they existed "at the time [the contract] was made" to determine if gross unfairness was apparent at that time. (Civ. Code, § 1670.5, subd. (a).)

When viewed in light of the circumstances as they existed on August 23, 1991, when the instant contract was executed, we cannot say the contract provision with respect to compensation after termination was so unfair or oppressive in its mutual obligations as to "shock the conscience." (*California Grocers Assn.* v. *Bank of America, supra*, 22 Cal.App.4th at p. 214.) If the official notes accompanying Uniform Commercial Code section 2-302, upon which Civil Code section 1670.5 is based, is to be relied upon as a guide,[5] the contract terms are to be evaluated "in the light of the general commercial background and the commercial needs of the particular trade or case, . . ." (U. Com. Code, § 2-302, com. 1). Corbin suggests that the test is whether the

---

[3]Some courts have considered the presence and advice of counsel to constitute circumstantial, if not conclusive, evidence that a contract is not unconscionable. (See e.g., *Resource Management Co.* v. *Weston Ranch* (Utah 1985) 706 P.2d 1028, 1045; *Bernina Distributors, Inc.* v. *Bernina Sewing Mach.* (10th Cir. 1981) 646 F.2d 434, 440.)

[4]A company representative testified at trial that a number of individuals have successfully negotiated for modification of this provision.

[5]Civil Code section 1670.5 was adopted verbatim from Uniform Commercial Code section 2-302. The legislative committee comment to section 1670.5 states: "The Assembly declares its intent, therefore, that the Official Code Comments to Uniform Commercial Code Section 2-302 prepared by the American Law Institute and National Conference of Commissioners on Uniform State Laws, . . . be used as an aid to interpretation of Section 1670.5." (Legis. committee com., Deering's Ann. Civ. Code (1994 ed.) § 1670.5, p. 328.) (See *Carboni* v. *Arrospide, supra*, 2 Cal.App.4th at p. 81.)

terms are "so extreme as to appear unconscionable according to the mores and business practices of the time and place." (1 Corbin, Contracts (1963) § 128, p. 551.)

Our survey of case law indicates that the contract provision challenged here is commonplace in employment contracts with sales representatives, such as Ali, who have ongoing responsibilities to "service" the account once the sale is made. (See, e.g., *Chretian* v. *Donald L. Bren Co.* (1984) 151 Cal.App.3d 385, 389 [198 Cal.Rptr. 523]; *J.S. DeWeese Co.* v. *Hughes-Treitler Mfg.* (Mo.App. 1994) 881 S.W.2d 638, 644-646; see also *Entis* v. *Atlantic Wire & Cable Corporation* (2d Cir. 1964) 335 F.2d 759, 762.) In briefing below, the rationale for deferring commissions until payment is actually received by the customer was explained by American Software: "[I]f the entire commission were to be deemed earned by merely obtaining buyers, the burden of servicing those buyers pending receipt of revenues would fall on American Software's other salespersons unfamiliar with the earlier transaction who would receive nothing for their efforts." In *Watson* v. *Wood Dimension, Inc.* (1989) 209 Cal.App.3d 1359, 1363-1365 [257 Cal.Rptr. 816], the court upheld an award of posttermination commissions for a reasonable period of time based on quantum meruit in the total absence of contractual provisions governing the situation. If a court can impose these terms on parties in the absence of an agreement, then it is difficult to see how such terms can be considered "unconscionable" when the parties agree to them.

Nor do we find that the terms of this contract represent "an overly harsh allocation of risks . . . which is not justified by the circumstances under which the contract was made." (*Carboni* v. *Arrospide, supra,* 2 Cal.App.4th at p. 83.) The contract terms with regard to Ali's compensation involved certain risks to both parties to the bargain. The contract in the instant case placed a risk on Ali that she would lose commissions from her customers if payment was not received by American Software within 30 days after her resignation. American Software took the risk that at the time of Ali's termination, she would not have earned sufficient commissions to cover the substantial draws "credited" to her. This is part of the bargaining process—it does not necessarily make a contract unconscionable. The contract simply does not appear to be "overly harsh or one-sided, with no justification for it at the time of the agreement." (*Vance* v. *Villa Park Mobilehome Estates, supra,* 36 Cal.App.4th at p. 709.)

Much of the parties' arguments in this case revolve around *Ellis* v. *McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796 [23 Cal.Rptr.2d

80]. In *Ellis* the court examined a provision in an employment contract denying the plaintiff, an advertising salesperson, commissions on advertising if the employer had not yet received payment for the advertising prior to termination of the salesperson's employment. The employer collected nearly $100,000 in advertising fees from the plaintiff's sales after he voluntarily left his employment two years later, which meant that the plaintiff would have been entitled to approximately $20,000 in commissions had he continued his employment. The court described the pivotal inquiry as assessing "the substantive *reasonableness* of the challenged provision" and proceeded to find elements of procedural unconscionability, unfair surprise, and oppression, as well as substantive unconscionability. (*Id.* at pp. 1805-1806, italics added.)

Despite the many analogous facts and issues, we reach a different conclusion than *Ellis*. In this instance, the conflicting result can most easily be explained by the fact that the *Ellis* court closely followed the *A&M Produce* analytical structure in considering whether the commissions provision was "reasonable"—an approach we have specifically rejected in favor of the more rigorous "shock the conscience" standard enunciated in *California Grocers Assn.* v. *Bank of America supra*, 22 Cal.App.4th at page 214. We also find the result in *Ellis* hard to reconcile with other California appellate decisions which have shown considerable restraint in second-guessing provisions in employment contracts governing payment of sales commissions upon termination of employment. (See, e.g., *Chretian* v. *Donald L. Bren, Co.*, *supra*, 151 Cal.App.3d at pp. 389-390; *Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690 [10 Cal.Rptr. 781].) A critical review of *Ellis* in the legal literature observes, "[T]he test on unconscionability is not whether the parties could have written a better or more reasonable contract. The proper test in these cases is whether the bargain is so one-sided as to shock the conscience and whether there was some bargaining impropriety resulting from surprise or oppression. The *Neal* and *Chretian* courts, unlike the court in *Ellis*, displayed the proper restraint and deference to agreements that were not egregiously one-sided in the allocation of risks." (Prince, *Unconscionability in California: A Need for Restraint and Consistency* (1995) 46 Hastings L.J. 459, 545.)

In the present case, there are no unclear or hidden terms in the employment agreement and no unusual terms that would shock the conscience, all leading to the conclusion that the contract accurately reflects the reasonable expectations of the parties. Overall, the evidence establishes that this employment contract was the result of an arm's-length negotiation between two sophisticated and experienced parties of comparable bargaining power and is

fairly reflective of prevailing practices in employing commissioned sales representatives. Therefore, the contract fails to qualify as unconscionable.

The judgment is reversed. Costs are awarded to American Software, Inc.

Peterson, P. J., and Haning, J., concurred.