Filed 5/20/24  Dopp v. Now Optics CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALLISON DOPP, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> NOW OPTICS, LLC et al., <br><br> Defendants and Appellants. | D081665 <br><br><br> (Super. Ct. No. 37-2022-00022391-CU-OE-CTL) |

APPEALS from an order of the Superior Court of San Diego County, Joel Wohlfeil, Judge.  Affirmed.

Polsinelli, Noel S. Cohen, September Rea, J. Alan Warfield, and Armida Derzakarian for Defendants and Appellants.

Pancer Law Corporation and Ian Pancer for Plaintiff and Respondent.

Defendants Now Optics, LLC (Now Optics), Vision Precision Holdings, LLC (Vision Precision), and two of their supervisorial employees, Alexander Sanchez and Amy Koger, appeal from an order denying their motion to compel arbitration of plaintiff Allison Dopp's employment claims.  We agree with the trial court that the arbitration agreement signed by Dopp as a condition of her employment is procedurally unconscionable and contains

multiple provisions that are substantively unconscionable. We also find no abuse of discretion in the trial court's decision that the arbitration agreement is so permeated with unconscionability as to preclude severance of the invalid provisions. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

New Optics and Vision Precision are affiliated Florida limited liability companies. They collectively operate over 180 optical retail stores across the country.

From 2019 to 2021, Dopp was employed by defendants at retail stores in San Diego County. When she was first hired, Dopp electronically signed various on-boarding documents, including a mandatory arbitration agreement. The arbitration agreement stated that, as a condition of her employment, Dopp agreed to final and binding arbitration of any dispute with the defendants or their officers, directors, supervisors, managers, employees, or agents.

As relevant here, the mandatory arbitration agreement contained the following provisions: (1) as a prerequisite to arbitration, the parties agreed "to make good faith efforts [to resolve] any dispute internally on an informal basis through Human Resources"; (2) if these informal resolution efforts failed, the parties agreed to submit to non-binding, pre-arbitration mediation by the American Arbitration Association (AAA) and agreed that "[t]he parties shall equally share the cost of the mediation"; (3) if the dispute remained unresolved, either party could then submit the dispute for resolution by "final binding confidential arbitration" under "the Employment Dispute Resolution Rules of the AAA (Rules) on a confidential basis"; (4) the arbitrator "shall apply the governing substantive law" of Florida; (5) the arbitration "shall take place in Palm Beach County, Florida, unless an alternative location is

2

chosen by mutual agreement of the parties or is otherwise prohibited by law";
(6) the parties "agree to share equally the AAA administrative fees and the
arbitrator's fees and expenses"; (7) "[a]ll other costs and expenses associated
with the arbitration, including, without limitation, each party's respective
attorneys' fees, shall be borne by the party incurring the expense"; and (8) the
parties "will not assert class action or representative action claims against
each other in arbitration or otherwise."

After her employment was terminated, Dopp filed suit against the
defendants. After dismissing her first lawsuit, Dopp filed this action. As
amended, the operative complaint alleged class action claims for meal and
rest period violations and overtime violations, as well as various individual
claims, including wrongful discharge and violations of the Fair Employment
and Housing Act (FEHA; Gov. Code, § 12900 et seq.) for alleged gender
discrimination, sexual harassment, failure to prevent harassment and/or
discrimination, and retaliation.

Defendants filed a motion to compel arbitration. In opposition, Dopp
argued that the arbitration agreement could not be enforced because it was
procedurally and substantively unconscionable.

After a hearing, the trial court denied the motion to compel arbitration
by written order. The court found that the arbitration agreement was
procedurally unconscionable because it was a contract of adhesion and did
not disclose the arbitration fees Dopp was required to pay. The court also
found that the following provisions of the arbitration agreement were
substantively unconscionable: (1) the Florida choice-of-law provision; (2) the
required sharing of arbitration fees and expenses; (3) the required sharing of
mediation fees and expenses; (4) the requirement that each party bear the
costs of their own attorney fees; (5) the confidentiality provision; and (6) the

3

requirement of informal dispute resolution. Finally, the court declined to sever the invalid provisions and concluded that the arbitration agreement could not be enforced because it was permeated with unconscionable provisions.

DISCUSSION

I

*Standard of Review*

Absent conflicting extrinsic evidence, we review de novo whether an arbitration clause is unconscionable. (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 283 (*Magno*).) However, we review the trial court's decision whether to sever unconscionable provisions for abuse of discretion. (*Ibid.*)

II

*Unconscionability*

The parties do not dispute that the arbitration clause is governed by the Federal Arbitration Act (FAA). (9 U.S.C. § 1 et seq.) The FAA reflects a liberal federal policy favoring arbitration as a matter of contract. (*Magno, supra*, 1 Cal.App.5th at p. 284.) Under both federal and state law, arbitration agreements are valid and enforceable, unless they are revocable for reasons under state law that would render any contract revocable, such as fraud, duress, or unconscionability. (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1054.)

The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)

4

Unconscionability has both a procedural and substantive element. (*Pinnacle, supra*, 55 Cal.4th at p. 246.) Procedural unconscionability addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. (*Ibid*.) Substantive unconscionability pertains to the fairness of an agreement's actual terms and whether they are overly harsh or one-sided. (*Ibid*.) Both elements must be present for a finding that the agreement is unconscionable, but they are evaluated on a sliding scale and need not be present in the same degree. (*Ibid*.) The more substantively oppressive the terms, the less evidence of procedural unconscionability is required, and vice versa. (*Id*. at p. 247.) The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126 (*OTO*).)

A. *Procedural Unconscionability*

Procedural unconscionability analysis begins by inquiring whether the contract is one of adhesion. (*OTO, supra*, 8 Cal.5th at p. 126.) An adhesive contract is a standard form contract offered by the party with superior bargaining position to the other party on a "take it or leave it" basis. (*Ibid*.) "Arbitration contracts imposed as a condition of employment are typically adhesive." (*Ibid*.) "In the employment context, '[a]n arbitration agreement that is an essential part of a "take it or leave it" employment condition, without more, is procedurally unconscionable.' " (*De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 485 (*De Leon*).)

The arbitration contract here was a prewritten form agreement, which the defendants presented to Dopp as a condition of employment on a "take it

5

or leave it" basis. As a contract of adhesion, the arbitration agreement had at least a modest degree of procedural unconscionability. (*De Leon, supra*, 72 Cal.App.5th at p. 485; *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 474; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 242–244.)

Like the trial court, we also find one additional element of procedural unconscionability. The arbitration agreement required Dopp to share the costs of both mediation and arbitration by the AAA, but did not provide her with any way of determining what those costs might be. According to her counsel's declaration, AAA's website does not provide any information about arbitrator or mediator fees, and AAA would not provide counsel with any estimate of those fees over the phone. In counsel's experience, the fees for a AAA arbitrator range from $350 to $750 per hour and up to $7,500 per day. Dopp's monthly earnings were barely sufficient to cover her basic living expenses, and she could not afford to pay for the cost of arbitration or mediation. Accordingly, she signed an arbitration agreement as a condition of employment without knowing that her share of the required arbitration costs could make it practically impossible for her to assert her rights. This element of surprise and oppression further contributes to the procedural unconscionability. (See *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 797 (*Ajamian*) [plaintiff "was unaware of the excessive costs she would incur in arbitrating"]; see also *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1571–1572 [same].)

"In the end, we need not quibble over whether there was a moderate level of [procedural] unconscionability, a low one, or just the required minimum; as we discuss next, the degree of substantive unconscionability was sufficient in any event to render the provision unenforceable." (*Ajamian, supra*, 203 Cal.App.4th at p. 797.)

6

B. *Substantive Unconscionability*

As noted, the trial court found that six provisions of the arbitration agreement were substantively unconscionable. On appeal, defendants do not contest the trial court's unconscionability finding as to four of these provisions. Even though most are uncontested, we will discuss all of them because we must decide whether the trial court correctly ruled that the arbitration clause was so permeated with unconscionability as to be unenforceable.

Before doing so, however, we address defendants' central argument that the arbitration agreement is bilateral. Although the agreement does refer to arbitration of "all" disputes arising out of Dopp's employment, including any claims "that Company may have against Employee," it was only signed by Dopp—not the defendants. Moreover, the opening paragraph of the agreement states that "[a]s a condition of the undersigned Employee's employment . . . *Employee* hereby agrees" to binding arbitration—but does not state that the defendants also agree to binding arbitration.[1] (Italics added.) In similar circumstances, some California courts have found a lack of mutuality. (See, e.g., *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86; *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 674; *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871,

---

[1] To add to the confusion, the last numbered paragraph of the arbitration agreement seems to contemplate signatures by all parties to express their consent to it. Paragraph 9 states: "The parties represent that they have been given the opportunity to fully review and comprehend the terms of this Agreement. *The parties understand the terms of this Agreement and freely and voluntarily sign this Agreement.* Each party fully understands and agrees that they are giving up certain rights otherwise afforded to them by civil court actions, including but not limited to the right to jury trial." (Italics added.)

883 (*Najarro*).)  But others have reached a seemingly contrary result.  (See, e.g., *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 250–254; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1472–1473 (*Roman*).)

We need not resolve this apparent conflict because we conclude it makes no difference to the outcome.  Even assuming the arbitration agreement is bilateral (which Dopp has not contested), it is substantively unconscionable for multiple other reasons we now discuss.  "Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 (*Armendariz*).)

### 1.  *Florida Choice-of-Law Provision*

The arbitration clause states: "In reaching a decision, the arbitrator shall apply the governing substantive law applicable to the claims, causes of action and defenses asserted by the parties as applicable in Florida."  The trial court concluded: "This provision is . . . substantively unconscionable as it forces Plaintiff to relinquish substantive rights provided under California law."  Defendants do not contest this finding on appeal.

In resisting arbitration, Dopp's counsel below asserted that Florida law was less favorable to employees than California law in multiple respects governing wages, overtime wages, meal and rest periods, and premium pay. Defendants submitted no contrary argument or evidence and have never contended that Florida's employment laws provide equivalent or greater substantive protections for employees.  Thus, the Florida choice-of-law

8

provision effectively "forces [Dopp] to waive her unwaivable statutory rights and remedies" under California law. (*Ajamian, supra*, 203 Cal.App.4th at pp. 798–799 [arbitration provision requiring application of New York law in California employment case was substantively unconscionable because defendants "fail[ed] to show that New York law would provide [plaintiff] with rights and remedies equivalent to those provided by California law"].)

Stated differently, this choice-of-law provision "on its face disables California substantive law, undermining [Dopp's] claims on the merits." (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 251 (*Pinela*) [discussing similar provision of arbitration agreement requiring application of Texas law in California employment case].) "Since [Dopp]'s wage-and-hour claims in this case are specifically founded on California statutory law, [this provision] works a substantial injustice on [her] as a citizen of California." (*Ibid*.) "This aspect of the Agreement is plainly obnoxious to public policy in California." (*Id*. at p. 252.)

Since the *Pinela* and *Ajamian* decisions, the Legislature has effectively codified their holdings on this issue. Enacted in 2017, Labor Code section 925, subdivision (a) now states that an employer may not require a California employee to agree as a condition of employment to a provision that would either (1) require the employee to "adjudicate" claims arising in California outside of California; or (2) deprive the employee of substantive protections of California law for a controversy arising in California. The statute explicitly defines "adjudication" to include "litigation and arbitration." (Lab. Code, § 925, subd. (d).) Thus, we conclude that the Florida choice-of-law provision is substantively unconscionable.

9

### 2. *Florida Forum-Selection Clause*

The arbitration clause also states: "Any arbitration conducted under this Agreement shall take place in Palm Beach County, Florida unless an alternative location is chosen by the mutual agreement of the parties or is otherwise prohibited by law." Dopp argued below that this forum-selection provision and the choice-of-law provision were both substantively unconscionable. However, the trial court did not expressly rule on the forum-selection clause.

We agree that the forum-selection clause is unconscionable.[2] As noted, Labor Code section 925, subdivision (a) prohibits an employer from imposing such a forum-selection clause on California employees as a condition of employment. This statute "clearly evinces a legislative intent that all cases and controversies that fall within [its] purview be litigated in California." (*LGCY Power, LLC v. Superior Court* (2022) 75 Cal.App.5th 844, 862; see also *Ryze Claim Solutions LLC v. Superior Court* (2019) 33 Cal.App.5th 1066, 1072 ["Labor Code section 925 establishes a policy prohibiting employers from requiring California employees . . . to litigate in a different forum as a prerequisite to employment . . . ."].)

Even apart from this statute, however, unconscionable provisions include those that seek to negate the reasonable expectations of the non-drafting party. (*Magno, supra*, 1 Cal.App.5th at p. 288.) As a California resident and employee, it was not within Dopp's reasonable expectations to be compelled to resolve employment disputes in a distant forum on the other

---

2    In the absence of any conflicting evidence, we are not limited to the specific provisions identified by the trial court in deciding the unconscionability issue as a pure question of law. (*Magno, supra*, 1 Cal.App.5th at p. 290, fn. 3; *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1250–1251 (*Murrey*).)

side of the country. "Arbitration in [Florida] would not have been in [P]laintiffs' reasonable expectations, and the forum selection provision renders the agreement to arbitrate substantively unconscionable." (*Ibid.*; see also *Murrey, supra*, 87 Cal.App.5th at p. 1247 ["Forced arbitration at a location in Northern California for an employee living in southern California would be unreasonable, and unanticipated"].)

Defendants claim that this provision is not unconscionable because Dopp "effectively chose California as the venue" by filing suit here and they have agreed to arbitrate in California. But what the employer may be "willing" to do "now that the employment relationship has ended" has no bearing on "the fact that the arbitration agreement as written is unconscionable and contrary to public policy." (*Armendariz, supra*, 24 Cal.4th at p. 125.) "The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events." (*Am. Software v. Ali* (1996) 46 Cal.App.4th 1386, 1391; see also *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116 (*Martinez*) [employer's "after-the-fact expression of willingness to amend the arbitration agreement to conform to law is ineffective"].) As written, the forum-selection clause is unconscionable because it purports to give defendants a right to insist on arbitration of California employment matters in their "own backyard" in Florida. (*Magno, supra*, 1 Cal.App.5th at p. 289.)

3. *Required Sharing of Arbitration Fees and Expenses*

The arbitration clause states: "The parties agree to share equally the AAA administrative fees and the arbitrator's fees and expenses." The trial court ruled that this provision is substantively unconscionable under our Supreme Court's decision in *Armendariz*. Defendants do not contest this

11

finding on appeal. Under *Armendariz*, "[w]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement . . . cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz, supra*, 24 Cal.4th at pp. 110–111; see also *id.* at p. 113 ["a mandatory employment arbitration agreement that contains within its scope arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration"].) Thus, a provision requiring the parties to share arbitration fees and expenses is substantively unconscionable. (*Martinez, supra*, 118 Cal.App.4th at pp. 115–116.)

4. *Required Sharing of Mediation Fees and Expenses*

The arbitration clause also requires non-binding, pre-arbitration mediation conducted and administered by AAA and states: "The parties shall equally share the cost of the mediation." The trial court ruled that this cost-sharing provision is also unconscionable under *Armendariz* "because it requires employees to pay fees and expenses as a condition of access to the arbitration forum." Defendants do not contest this finding on appeal either. As noted, *Armendariz* applies to "any *type* of expense that the employee would not be required to bear" to litigate the matter in court. (*Armendariz, supra*, 24 Cal.4th at pp. 110–111.) This includes pre-arbitration mediation fees. (See, e.g., *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 826 (*Lhotka*).)

5. *Requirement that Each Party Pay Their Own Attorney Fees*

The arbitration clause states that "each party's attorneys' fees" associated with the arbitration "shall be borne by the party incurring the expense." The trial court concluded that this provision is also unconscionable

12

under *Armendariz*. Defendants do not contest this finding on appeal. "By requiring both parties to bear their own attorney fees and costs, the provision . . . runs counter to FEHA which allows a successful plaintiff to recover . . . fees and costs from the employer . . . . Such a modification of California law is inappropriate under *Armendariz* as it has the effect of denying a plaintiff the rights and remedies he or she would have if he or she were litigating his or her claims in court." (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 183.)

6. *Confidentiality Requirement*

The arbitration clause states that the parties may submit disputes for resolution "by final binding confidential arbitration" and that the arbitration must be conducted "under the Employment Dispute Resolution Rules of the AAA (Rules) on a confidential basis." Relying on *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, the trial court found that the confidentiality requirement was "substantively unconscionable because it would impair Plaintiff's ability to engage in informal discovery in pursuit of her litigation claims." On appeal, defendants contest this finding and argue that *Ramos* is distinguishable because the language of the confidentiality clause at issue there more broadly covered "all aspects of the arbitration." (*Id*. at p. 1065.) They further contend that the confidentiality clause is enforceable under *Sanchez v. CarMax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 408, and *Woodside Homes of California, Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 732.

Our colleagues in Division Three recently considered these authorities and found a confidentiality provision to be substantively unconscionable in the context of a claim for workplace sexual harassment and discrimination. (*Murrey, supra*, 87 Cal.App.5th at pp. 1253–1255.) The court reasoned: "The

13

notion that courts should condone requirements keeping the outcome of forced arbitration proceedings confidential is out of step with federal and sister state case authority." (*Id*. at p. 1254.) Quoting from a Washington Supreme Court case, the court noted that such a confidentiality provision " 'is harsh and blatantly benefits only [an employer] because it "serves no purpose other than to tilt the scales of justice in favor of the employer by denying access to any information about other claims against the employer to other potential victims of discrimination." ' " (*Ibid*., quoting *Zuver v. Airtouch Communications, Inc.* (2004) 153 Wash.2d 293, 313–314 [103 P.3d 753, 765].)

The *Murrey* court also quoted from a House committee report on the federal Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the Act), which voids pre-dispute arbitration clauses in cases involving sexual assault or sexual harassment.[3] (9 U.S.C. §§ 401, 402; *Murrey, supra*, 87 Cal.App.5th at pp. 1230, 1234–1235.) The House committee report stated: " 'Unlike the judicial system . . . the results of arbitration disputes are often kept secret. . . . [A] coalition of state attorneys general — representing all 50 states, the District of Columbia and several U.S. territories — have . . . noted arbitration's required "veil of secrecy" applies to workplace sexual harassment claims, which may prevent similarly situated persons from learning of illegal conduct and seeking relief. The coalition referred to this phenomenon as a "culture of silence that protects perpetrators at the cost of their victims." ' " (*Id*. at p. 1254, quoting H.R.Rep.

---

[3]	The Act became effective immediately on March 3, 2022 and applies to any case filed after its enactment, including a case alleging sexual assault or sexual harassment under state law. (9 U.S.C. §§ 401, 402; *Murrey, supra*, 87 Cal.App.5th at p. 1235.) This case was filed in June 2022 and includes a FEHA claim for sexual harassment. Because Dopp has not argued that the Act applies here, we do not consider the issue.

14

No. 117-234, 2d Sess., pp. 4–5 (2022) (House Report).) "Congress and President Biden were convinced the Act was necessary due to growing evidence the secretive nature of arbitration was fostering 'the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers.'" (*Id*. at p. 1255, quoting House Report, p. 4.)

Although the *Murrey* court concluded that the Act did not apply retroactively to a case filed before its enactment (*Murrey, supra*, 87 Cal.App.5th at pp. 1234–1235), it nevertheless found that the confidentiality provision was unconscionable because it "serve[d] no purpose other than to benefit [the employer]." (*Id*. at p. 1255.) "Future employees cannot take advantage of findings in past arbitrations or prove a pattern of discrimination and/or retaliation." (*Ibid*.) "In addition, 'keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process and thus potentially discourages that employee from pursuing a valid discrimination claim.'" (*Ibid*.) The court therefore ruled that the "confidentiality provision added to this agreement's [substantive] unconscionability."[4] (*Ibid*.)

---

[4] The confidentiality provision in *Murrey* stated that the plaintiff could not "publish or disseminate" the arbitration award. (*Murrey, supra*, 87 Cal.App.5th at pp. 1253–1254.) In this case, the arbitration clause more generally requires "final binding confidential arbitration" and states that the arbitration must be conducted "on a confidential basis." Construing this language as it would likely be understood by a reasonable layperson, we interpret it to mean that the existence of the arbitration proceeding and the final arbitration award must be kept confidential, except as necessary for judicial review as permitted by the arbitration agreement.

Other courts have recently followed and applied *Murrey* both within and outside the employment context. (*Hasty v. American Automobile Assn. etc.* (2023) 98 Cal.App.5th 1041, 1062 [confidentiality provision in arbitration agreement signed as a condition of employment was unconscionable]; *Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1290 (*Haydon*) [confidentiality provision in arbitration agreement signed by resident of elder care facility was "unconscionable to a high degree"].)

We too find this reasoning to be persuasive. Accordingly, we conclude that the trial court correctly found the confidentiality requirement to be substantively unconscionable.

7. *Informal Dispute Resolution*

As a prerequisite for mediation and arbitration, the arbitration agreement required the parties to "make good faith efforts at resolving any dispute internally on an informal basis through Human Resources." The trial court found this provision to be unconscionable under *Nyulassy v. Lockheed Martin Corporation* (2004) 120 Cal.App.4th 1267, 1288. Defendants argue that *Nyulassy* is distinguishable because the agreement at issue there was non-mutual. They also assert that this informal dispute resolution requirement is valid under *Roman, supra*, 172 Cal.App.4th at page 1467, and *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 710 (*Serpa*).

Based on our earlier assumption that the arbitration agreement is mutual, we agree with the defendants on this point. As the court observed in *Serpa*: "[A] requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." (*Serpa, supra*, 215

16

Cal.App.4th at p. 710.) We therefore conclude that this provision is not substantively unconscionable.[5]

In sum, we find six provisions of the arbitration agreement to be substantively unconscionable: (1) the Florida choice-of-law provision; (2) the Florida forum-selection clause; (3) the required sharing of arbitration fees and expenses; (4) the required sharing of mediation fees and expenses; (5) the requirement that each party bear the costs of their own attorney fees; and (6) the confidentiality provision. Based on the number of unconscionable provisions, and their cumulative effect in depriving Dopp of rights and remedies available under California law, we conclude that the arbitration agreement overall registers high on the scale of substantive unconscionability.

---

[5] Though not challenged by Dopp, one other provision of the arbitration agreement appears to be substantively unconscionable. The arbitration agreement states each party "will not assert class action *or representative action* claims against the other in arbitration *or otherwise*." (Italics added.) On its face, this provision absolutely prohibits employees from asserting representative claims for Labor Code violations under the Private Attorneys General Act (PAGA)—even in court. (Lab. Code, § 2698 et seq.) Under *Iskanian v. CLS Transportation, Los Angeles LLC* (2014) 59 Cal.4th 348, such "blanket waivers of PAGA claims are unconscionable" even after the United States Supreme Court's decision partially overruling *Iskanian* in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 142 S.Ct. 1906. (*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 494–495; see also *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1062–1063 (*Mills*).) And for this purpose, "[i]t is irrelevant that [Dopp] has not brought a PAGA action." (*Najarro, supra*, 70 Cal.App.5th at pp. 882–883 [PAGA waiver was substantively unconscionable].) We will not consider this provision in our overall analysis, however, because the parties have not had an opportunity to brief it.

C. *Severance*

We now consider whether the trial court abused its discretion by declining to sever the unconscionable provisions and enforce the remainder of the arbitration agreement. No abuse of discretion can be shown if there is a reasonable or fairly debatable legal justification for the court's ruling. (*De Leon, supra*, 72 Cal.App.5th at pp. 492–493 [no abuse of discretion in trial court's decision not to sever two unconscionable provisions that caused the arbitration agreement to be "permeated by unconscionability"].)

In deciding whether to sever unconscionable provisions, the trial court must consider whether the interests of justice would be furthered by severance. The preference is to sever unless the agreement is permeated by unconscionability. (*De Leon, supra*, 72 Cal.App.5th at p. 492.) There is no magic number of unconscionable provisions required for a permeation finding. (*Murrey, supra*, 87 Cal.App.5th at p. 1255.) "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.)

The existence of "more than one unlawful provision" is a factor weighing against severance. (*Armendariz, supra*, 24 Cal.4th at p. 124.) "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Ibid*.)

We find no abuse of discretion by the trial court. Not only were there six unconscionable provisions, but they systematically operated to deprive Dopp of valuable rights and remedies as a California employee. The evident

18

purpose of the arbitration agreement was not just to provide a more efficient forum, but to strip non-Florida employees of greater employment rights guaranteed to them by their home states. "When we consider the procedural[ly] and substantively unconscionable provisions together, they indicate a concerted effort to impose on an employee a forum with distinct advantages for the employer." (*Murrey, supra*, 87 Cal.App.5th at p. 1256.) "[G]iven the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose." (*Armendariz, supra*, 24 Cal.4th at p. 124.) To borrow from another court's vivid imagery, "substantive unconscionability was 'so present that it is almost impossible to keep from tripping' over it." (*Lhotka, supra*, 181 Cal.App.4th at p. 824.)

Defendants assert that the trial court incorrectly determined it only had the discretion to strike a single provision, even though the agreement is bilateral and contains a severability provision. We disagree. In its ruling, the trial court quoted directly from the portion of the Supreme Court's decision in *Armendariz* holding that, on the particular facts of that case, the presence of "two factors weigh[ed] against severance": (1) the existence of "more than one unlawful provision"; and (2) "the agreement's lack of mutuality" which could not be cured by striking only a single provision. (*Armendariz, supra*, 24 Cal.4th at p. 124.) Thus, the trial court's order reflects a proper understanding that the existence of more than one unconscionable provision was only one "factor" weighing against severance.

In similar circumstances, appellate courts have found no abuse of discretion in a trial court's refusal to sever multiple unconscionable provisions—even when the arbitration agreement was facially bilateral and had a severability clause. (See, e.g., *Haydon, supra*, 97 Cal.App.5th at

19

pp. 1284, 1292 [applying *Armendariz* "permeated by unconscionability" standard, finding no abuse of discretion by trial court, and stating "[d]efendants cite no authority that the provision's severability clause somehow divested the court of its discretion in this regard"]; *Mills, supra*, 84 Cal.App.5th at pp. 1045–1046, 1065–1069 [applying *Armendariz* and finding no abuse of discretion despite facially bilateral arbitration agreement with severability clause].)

As in *Mills*, the trial court here did not cite or rely on any "per se" rule invalidating arbitration agreements with more than one unconscionable provision. (*Mills, supra*, 84 Cal.App.5th at p. 1067.) "Instead, the court properly recounted the numerous specific provisions that would need to be severed (or reformed) to make the agreement enforceable. Moreover, where, as here, an arbitration agreement has numerous unconscionable provisions, those provisions taint the agreement with illegality such that even if each unlawful provision could be surgically removed from the agreement, the one-sided agreement is not enforceable."[6] (*Ibid.*; see also *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 216 ["central purpose" of four unconscionable provisions was "to evade the statutory protections and limit the remedies available" to employee under California law—and "because there is no single provision that can be stricken to 'remove

_____

[6]    In the trial court, defendants argued that the Florida choice-of-law and forum-selection provisions were severable because Labor Code section 925, subdivision (b) states that such invalid provisions are "voidable by the employee." We need not consider whether severance would have been required if these were the only substantively unconscionable provisions. The trial court's ruling that the arbitration agreement was permeated with unconscionability is supported by the inclusion of these facially invalid provisions along with four other unconscionable provisions.

20

the unconscionable taint from the agreement,' the trial court did not abuse its discretion when it found the arbitration clause could not be enforced"].)

In these circumstances, "[t]o enforce the agreement would incentivize employers to impose multiple unlawful arbitration provisions on employees, who would likely forego bringing suit for fear they would be forced to bear the costs and burdens of the one-sided arbitration agreement. If an employee had the resources to bring suit in court and challenge enforcement of the arbitration agreement, the employer could still compel arbitration if the trial court was willing to sever the offending provisions." (*Mills, supra*, 84 Cal.App.5th at pp. 1067–1068; see also *Armendariz, supra*, 24 Cal.4th at p. 124, fn. 13 ["An employer will not be deterred from routinely inserting . . . a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter."].)

Finally, even if the trial court had based its ruling in part on a misunderstanding that it could not sever more than one unconscionable provision, the error would not require reversal. (See *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 453–455 [no reversal even though trial court erroneously concluded "that any more than a single unconscionable provision in an arbitration agreement *precludes* severance" as a matter of law].) This is so because, as in *Lange*, the trial court also ruled that the arbitration agreement was "permeated with unconscionable provisions" under *Armendariz*. Thus, any "erroneous understanding of applicable law regarding the number of unconscionable provisions that may render an arbitration agreement irreparable by severance"—such as the misunderstanding expressed by the trial court in *Lange*—would not require

21

reversal because "we agree with the trial court that the parties' arbitration agreement is permeated with too high a degree of unconscionability for severance to rehabilitate." (*Lange*, at p. 455.)

We conclude "the trial court did not abuse its discretion in finding the inclusion of multiple unlawful terms permeated the agreement with unconscionability." (*Mills, supra*, 84 Cal.App.5th at p. 1066.)

DISPOSITION

The order denying the motion to compel arbitration is affirmed. Respondent is entitled to recover her costs on appeal.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.

22